(Slip Opinion)            OCTOBER TERM, 2008            1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ABUELHAWA *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 08–192.   Argued March 4, 2009—Decided May 26, 2009

A wiretap of Mohammed Said's telephone recorded six calls in which petitioner Abuelhawa arranged to buy cocaine from Said in two separate 1-gram transactions. Those two purchases were misdemeanors under the Controlled Substances Act (CSA), 21 U. S. C. §844, while Said's two sales were felonies, §841(a)(1) and (b). The Government charged Abuelhawa with six felonies on the theory that each of the phone calls, some placed by him, some by Said, violated §843(b), which makes it a felony "to use any communication facility in . . . facilitating" felony distribution and other drug crimes. The District Court denied Abuelhawa's acquittal motion, in which he argued that his efforts to make misdemeanor purchases could not be treated as facilitating Said's felonies. The jury convicted Abuelhawa on all six felony counts. The Fourth Circuit affirmed, reasoning that "facilitat[e]" should be given its ordinary meaning in §843(b) and that Abuelhawa's use of a phone to buy cocaine counted as ordinary facilitation because it made Said's distribution of the drug easier.

*Held:* Using a telephone to make a misdemeanor drug purchase does not "facilitat[e]" felony drug distribution in violation of §843(b). Stopping with the plain meaning of "facilitate" here would ignore the rule that because statutes are not read as a collection of isolated phrases, "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities." *Dolan* v. *Postal Service*, 546 U. S. 481, 486. Here it does not. The literal sweep of "facilitat[e]" sits uncomfortably with common usage: Where a transaction like a sale necessarily presupposes two parties with specific roles, it would be odd to speak of one party as facilitating the other's conduct. The common usage has its parallel in cases holding that where a statute treats one side of a bilateral transaction more leniently, adding to the

penalty of the party on that side for facilitating the action by the other would upend the legislature's punishment calibration. In *Gebardi* v. *United States*, 287 U. S. 112, 119, for example, the Court held that a woman who voluntarily crossed a state line with a man to have sex could not be tagged with the Mann Act violation for "aid[ing] or assist[ing]" interstate transportation for immoral purposes because the statutory penalties were "clearly directed against the acts of the transporter as distinguished from the consent of the subject of the transportation." Such cases have a bearing here in two ways. First, given the presumption, see, *e.g.*, *Williams* v. *Taylor*, 529 U. S. 362, 380–381, and n. 12, that the Congress that enacted §843(b) was familiar with the traditional judicial limitation on applying terms like "aid," "abet," and "assist," it is likely the Legislature had a comparable scope in mind when it used "facilitate," a word with equivalent meaning. Second, any broader reading would for practical purposes substantially skew the congressional calibration of respective buyer-seller penalties. Moreover, the statute's history—which shows that in 1970 the CSA downgraded simple possession from a felony to a misdemeanor, §844(a), and simultaneously limited the communications provision's prohibition of facilitating a drug "offense" to facilitating a "felony," §843(b)—drives home what is clear from the statutory text: Congress meant to treat purchasing drugs for personal use more leniently than felony distribution, and to narrow the scope of the communications provision to cover only those who facilitate a felony. Yet, under the Government's reading of §843(b), in a substantial number of cases Congress would for all practical purposes simultaneously have graded back up to felony status with the left hand the same offense, simple drug possession, it had dropped to a misdemeanor with the right. Given that Congress used no language spelling out a purpose so improbable, but legislated against a background usage of terms such as "aid," "abet," and "assist" that points in the opposite direction and accords with the CSA's choice to classify small purchases as misdemeanors, the Government's position is just too unlikely. Pp. 3–8.

523 F. 3d 415, reversed and remanded.

SOUTER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–192

SALMAN KHADE ABUELHAWA, PETITIONER
*v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[May 26, 2009]

JUSTICE SOUTER delivered the opinion of the Court.

The Controlled Substances Act (CSA) makes it a felony "to use any communication facility in committing or in causing or facilitating" certain felonies prohibited by the statute.  84 Stat. 1263, 21 U. S. C. §843(b).  The question here is whether someone violates §843(b) in making a misdemeanor drug purchase because his phone call to the dealer can be said to facilitate the felony of drug distribution.  The answer is no.

I

FBI agents believed Mohammed Said was selling co-caine and got a warrant to tap his cell phone.  In the course of listening in, they recorded six calls between Said and petitioner Salman Khade Abuelhawa, during which Abuelhawa arranged to buy cocaine from Said in two separate transactions, each time a single gram.  Abuel-hawa's two purchases were misdemeanors, §844, while Said's two sales were felonies, §841(a)(1) and (b).  The Government nonetheless charged Abuelhawa with six felonies on the theory that each of the phone calls, whether placed by Abuelhawa or by Said, had been made

"in causing or facilitating" Said's felonies, in violation of
§843(b).[1]  Abuelhawa moved for acquittal as a matter of
law, arguing that his efforts to commit the misdemeanors
of buying cocaine could not be treated as causing or facili-
tating Said's felonies, but the District Court denied his
motion, App. to Pet. for Cert. 20a–25a, and the jury con-
victed him on all six felony counts.

Abuelhawa argued the same point to the Court of Ap-
peals for the Fourth Circuit, with as much success.  The
Circuit reasoned that "for purposes of §843(b), 'facilitate'
should be given its 'common meaning—to make easier or
less difficult, or to assist or aid.'"  523 F. 3d 415, 420
(2008) (quoting *United States* v. *Lozano,* 839 F. 2d 1020,
1023 (CA4 1988)).  The court said Abuelhawa's use of a
phone to buy cocaine counted as ordinary facilitation
because it "undoubtedly made Said's cocaine distribution
easier; in fact, 'it made the sale possible.'"  523 F. 3d, at
421 (quoting *United States* v. *Binkley,* 903 F. 2d 1130,
1136 (CA7 1990) (emphasis deleted)). We  granted  certio-
rari, 555 U. S. ___ (2008), to resolve a split among the
Courts of Appeals on the scope of §843(b),[2] and we now

_____

[1] In full, §843(b) provides:

"It shall be unlawful for any person knowingly or intentionally to use
any communication facility in committing or in causing or facilitating
the commission of any act or acts constituting a felony under any
provision of this subchapter or subchapter II of this chapter.  Each
separate use of a communication facility shall be a separate offense
under this subsection. For purposes of this subsection, the term 'com-
munication facility' means any and all public and private instrumen-
talities used or useful in the transmission of writing, signs, signals,
pictures, or sounds of all kinds and includes mail, telephone, wire,
radio, and all other means of communication."

Section 843(d) provides, subject to exceptions not at issue here, that
"any person who violates this section shall be sentenced to a term of
imprisonment of not more than 4 years, a fine . . . , or both."

[2] Compare, *e.g., United States* v. *Binkley*, 903 F. 2d 1130, 1135–1136
(CA7 1990) (buyer's use of phone in purchasing drugs facilitates seller's
drug distribution), with *United States* v. *Baggett*, 890 F. 2d 1095, 1097–

reverse.

## II

The Government's argument is a reprise of the Fourth Circuit's opinion, that Abuelhawa's use of his cell phone satisfies the plain meaning of "facilitate" because it "allow[ed] the transaction to take place more efficiently, and with less risk of detection, than if the purchaser and seller had to meet in person." Brief for United States 10. And of course on the literal plane, the phone calls could be described as "facilitating" drug distribution; they "undoubtedly made . . . distribution easier." 523 F. 3d, at 421. But stopping there would ignore the rule that, because statutes are not read as a collection of isolated phrases, see *United States Nat. Bank of Ore.* v. *Independent Ins. Agents of America, Inc.*, 508 U. S. 439, 455 (1993), "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities," *Dolan* v. *Postal Service*, 546 U. S. 481, 486 (2006). We think the word here does not.

To begin with, the Government's literal sweep of "facilitate" sits uncomfortably with common usage. Where a transaction like a sale necessarily presupposes two parties with specific roles, it would be odd to speak of one party as facilitating the conduct of the other. A buyer does not just make a sale easier; he makes the sale possible. No buyer, no sale; the buyer's part is already implied by the term "sale," and the word "facilitate" adds nothing. We would not say that the borrower facilitates the bank loan.

The Government, however, replies that using the instrument of communication under §843(b) is different from borrowing the money or merely handing over the sale price for cocaine. Drugs can be sold without anyone's

--------

1098 (CA10 1989) (buyer's use of phone in purchasing drugs does not facilitate seller's drug distribution); *United States* v. *Martin*, 599 F. 2d 880, 888–889 (CA9 1979) (same), overruled on other grounds, *United States* v. *De Bright*, 730 F. 2d 1255 (CA9 1984).

mailing a letter or using a cell phone. Because cell phones, say, really do make it easier for dealers to break the law, Congress probably meant to ratchet up the culpability of the buyer who calls ahead. But we think that argument comes up short against several more reasons that count against the Government's position.

The common usage that limits "facilitate" to the efforts of someone other than a primary or necessary actor in the commission of a substantive crime has its parallel in the decided cases. The traditional law is that where a statute treats one side of a bilateral transaction more leniently, adding to the penalty of the party on that side for facilitating the action by the other would upend the calibration of punishment set by the legislature, a line of reasoning exemplified in the courts' consistent refusal to treat non-criminal liquor purchases as falling under the prohibition against aiding or abetting the illegal sale of alcohol. See *Lott* v. *United States*, 205 F. 28, 29–31 (CA9 1913) (collecting cases). And this Court followed the same course in rejecting the broadest possible reading of a similar provision in *Gebardi* v. *United States*, 287 U. S. 112 (1932). The question there was whether a woman who voluntarily crossed a state line with a man to engage in "illicit sexual relations" could be tagged with "aid[ing] or assist[ing] in . . . transporting, in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or of debauchery, or for any other immoral purpose" in violation of the Mann Act, ch. 395, 36 Stat. 825. *Gebardi*, 287 U. S., at 116–118 (internal quotation marks omitted). Since the statutory penalties were "clearly directed against the acts of the transporter as distinguished from the consent of the subject of the transportation," we refused to "infer that the mere acquiescence of the woman transported was intended to be condemned by the general language punishing those who aid and assist the transporter, any more than it has been inferred that the purchaser of liquor was to be re-

garded as an abettor of the illegal sale." *Id.*, at 119 (footnote omitted).

These cases do not strictly control the outcome of this one, but we think they have a bearing here, in two ways. As we have said many times, we presume legislatures act with case law in mind, *e.g.*, *Williams* v. *Taylor*, 529 U. S. 362, 380–381, and n. 12 (2000), and we presume here that when Congress enacted §843(b), it was familiar with the traditional judicial limitation on applying terms like "aid," "abet," and "assist." We thus think it likely that Congress had comparable scope in mind when it used the term "facilitate," a word with equivalent meaning, compare Black's Law Dictionary 76 (8th ed. 2004) (defining "aid and abet" as to "facilitate the commission of a crime") with *id.*, at 627 (defining "facilitation" as "[t]he act or an instance of aiding or helping; . . . the act of making it easier for another person to commit a crime").

And applying the presumption is supported significantly by the fact that here, as in the earlier cases, any broader reading of "facilitate" would for practical purposes skew the congressional calibration of respective buyer-seller penalties. When the statute was enacted, the use of land lines in drug transactions was common, and in these days when everyone over the age of three seems to carry a cell phone, the Government's interpretation would skew the calibration of penalties very substantially. The respect owed to that penalty calibration cannot be minimized. Prior to 1970, Congress punished the receipt, concealment, purchase, or sale of any narcotic drug as a felony, see 21 U. S. C. §174 (1964 ed.) (repealed), and on top of that added a minimum of two years, and up to five, for using a communication facility in committing, causing, or facilitating, any drug "offense," 18 U. S. C. §1403 (1964 ed.). In 1970, however, the CSA, 84 Stat. 1242, 21 U. S. C. §801 *et seq.*, downgraded simple possession of a controlled substance to a misdemeanor, 21 U. S. C. §844(a) (2006 ed.),

and simultaneously limited the communications provision to prohibiting only the facilitation of a drug "felony," §843(b). This history drives home what is already clear in the current statutory text: Congress meant to treat purchasing drugs for personal use more leniently than the felony of distributing drugs, and to narrow the scope of the communications provision to cover only those who facilitate a drug felony. Yet, under the Government's reading of §843(b), in a substantial number of cases Congress would for all practical purposes simultaneously have graded back up to felony status with the left hand the same offense it had dropped to a misdemeanor with the right. As the Government sees it, Abuelhawa's use of a phone in making two small drug purchases would subject him, in fact, to six felony counts and a potential sentence of 24 years in prison, even though buying the same drugs minus the phone would have supported only two misdemeanor counts and two years of prison. Given the CSA's distinction between simple possession and distribution, and the background history of these offenses, it is impossible to believe that Congress intended "facilitating" to cause that twelve-fold quantum leap in punishment for simple drug possessors.[3]

---

[3] The Government's suggestion that a result like this is not anomalous because a prosecutor could exercise his discretion to seek a lower sentence, see Tr. of Oral Arg. 41, simply begs the question. Of course, Congress legislates against a background assumption of prosecutorial discretion, but this tells us nothing about the boundaries of punishment within which Congress intended the discretion to be exercised; prosecutorial discretion is not a reason for courts to give improbable breadth to criminal statutes. And it ill behooves the Government to invoke discretionary power in this case, with the prosecutor seeking a sentencing potential of 24 years when the primary offense is the purchase of two ounces of cocaine. For that matter, see *id.*, at 41–43 (concession by Government that current Department of Justice guidelines require individual prosecutors who bring charges to charge the maximum crime supported by the facts in a case).

The Government suggests that this background usage and the 1970 choice to reduce culpability for possession is beside the point because Congress sometimes incorporates aggravating factors into the Criminal Code, and the phone use here is just one of them; the Government mentions possession by a prior drug offender, a felony punishable by up to two years' imprisonment. And, for perspective, the Government points to unauthorized possession of fluni-trazepim, a drug used to incapacitate rape victims, which is punishable by imprisonment up to three years. Brief for United States 20. It would not be strange, the Govern-ment says, for Congress to "decid[e] to treat the use of a communication facility in a drug transaction as a signifi-cant act warranting additional punishment" because "[t]oday's communication facilities . . . make illicit drug transactions easier and more efficient . . . . [and] greatly reduce the risk that the participants will be detected while negotiating a transaction." *Id.*, at 23–24.

We are skeptical. There is no question that Congress intended §843(b) to impede illicit drug transactions by penalizing the use of communication devices in coordinat-ing illegal drug operations, and no doubt that its purpose will be served regardless of the outcome in this case. But it does not follow that Congress also meant a first-time buyer's phone calls to get two small quantities of drugs for personal use to expose him to punishment 12 times more severe than a purchase by a recidivist offender and 8 times more severe than the unauthorized possession of a drug used by rapists.[4] To the contrary, Congress used no

---

[4] The Government does nothing for its own cause by noting that 21 U. S. C. §856 makes it a felony to facilitate "the simple possession of drugs by others by making available for use . . . a place for the purpose of unlawfully using a controlled substance" even though the crime facilitated may be a mere misdemeanor. Brief for United States 21 (internal quotation marks and alterations omitted). This shows that Congress knew how to be clear in punishing the facilitation of a mis-

language spelling out a purpose so improbable, but legislated against a background usage of terms such as "aid," "abet," and "assist" that points in the opposite direction and accords with the CSA's choice to classify small purchases as misdemeanors. The Government's position is just too unlikely.[5]

## III

The judgment of the Court of Appeals for the Fourth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

———————

demeanor as a felony, and it only highlights Congress's decision to limit §843(b) to the facilitation of a "felony."

[5] The Government asks us to affirm the Fourth Circuit on an alternative ground: that Abuelhawa used a communication facility "in causing" Said's drug felony rather than "in . . . facilitating" the felony. But the Government's argument on this point takes the same form as its argument about the term "facilitate," and the reasons that lead us to reject the one argument apply just as well to the other.