NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0127n.06

No. 08-5428

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 25, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| BRIAN SLAYTON, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:     MARTIN, ROGERS, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.**

A jury convicted Brian Slayton of seventeen counts total of conspiracy to distribute powder cocaine and crack cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute powder cocaine and crack cocaine in violation of 21 U.S.C. § 841, and use of a communication facility to facilitate a conspiracy to distribute powder cocaine and crack cocaine in violation of 21 U.S.C. § 843.  On appeal, Slayton raises two issues, involving only four of the counts on which he was convicted.  Finding no error in Slayton's convictions, we affirm.

**I.**

A grand jury returned a nineteen-count indictment in March 2000 against Brian Slayton, charging him with various drug-related offenses for activities occurring between mid-1997 through July 1998.  The indictment specifically charged that Slayton conspired with three named individuals,

as well as other known and unknown individuals, to distribute powder cocaine and crack cocaine.

Evidence supporting the charges included recorded telephone conversations, which were intercepted

pursuant to court-authorized wiretaps put in place to target a suspected drug organization in

Chattanooga, Tennessee. In addition to the phone recordings, Slayton's co-conspirators provided

information on Slayton's involvement in the drug conspiracy. Before authorities executed a warrant

for Slayton's arrest, Slayton fled the area and was not captured until March 2005. A jury trial

commenced in November 2007, and the jury found Slayton guilty of Counts One through Six of the

indictment and Counts Nine through Nineteen.[1] Because Slayton's appeal involves issues related

only to Counts Nine and Twelve and Counts Fourteen and Seventeen, we focus on the facts

surrounding those Counts.

A. Facts Related to Counts Nine and Twelve

Counts Nine and Twelve both charged that Slayton

> knowingly and intentionally used a communication facility, that is,
> the telephone, to facilitate the commission of a felony under the
> Controlled Substance Act, that is conspiracy to distribute cocaine
> hydrochloride (powder) and cocaine base (crack), Schedule II
> controlled substances, in violation of Title 21, United States Code,
> Section 846, all in violation of Title 21, United States Code, Section
> 843(b).

Count Nine was based on a telephone conversation that took place on June 5, 1998, at approximately

2:55 p.m., involving Slayton and Nathan Benford, one of Slayton's co-conspirators. Count Twelve

---

[1] After the government presented its case-in-chief, the district court granted Slayton's motion to dismiss Counts Seven and Eight of the indictment, charging Slayton with possession with intent to distribute on July 28, 1998, and use of a telephone to facilitate the commission of a felony under the Controlled Substance Act on June 4, 1998.

was premised on a telephone conversation recorded on July 10, 1998, at approximately 4:16 p.m.,

also involving Slayton and Benford.

The June 5 conversation, forming the basis for Count Nine, involved the following partial

exchange between Slayton and Benford:

| | |
|---|---|
| Slayton: | Five and nine. Five for the nine. Fifty five for the nine? |
| Benford: | Who, what, when? What the hell? |
| Slayton: | Fifty five for nine something[.] |
| Benford: | Fifty five for nine? |
| Slayton: | Yeah. |
| Benford: | Come down at Ronnie's and holler at me man. |
| Slayton: | Man I'm at work. |
| Benford: | You at work? |
| Slayton: | Yeah. |
| Benford: | Well holler at me when you get off. |

The conversation ended with Slayton agreeing to contact Benford when he got off work.  A similar

exchange took place on July 10, which formed the basis for Count Twelve:

| | |
|---|---|
| Slayton: | Islam? |
| Benford: | Yeah man. |
| Slayton: | What you say about that? |
| Benford: | Man I told you what what's was up yesterday man. |
| Slayton: | Why don't you double that up man. Put, put me on a mission. |
| Benford: | What? |
| Slayton: | Double that up and put me on a mission. |
| Benford: | Shit man, you too hard man. |
| Slayton: | Don't start that man. |
| Benford: | Man you know I'm in bad shape man. |
| Slayton: | Don't start what the hell, I'm gonna, I'm gonna take care of that. |

This call ended with Slayton agreeing to meet with Benford.

To support its case on Counts Nine and Twelve, the government called Special Agent Wayne Jackson, the agent investigating the case for the Federal Bureau of Investigation, to testify about the process used to record telephone conversations and the code words that drug dealers use when they arrange drug transactions over the telephone. Jackson testified that individuals who frequently deal with each other have a close relationship and, thus, say very little over the phone. Jackson also explained the difference between crack cocaine and powder cocaine and the quantities in which the two are frequently sold. Finally, Jackson gave specific testimony on the investigation into the drug organization in Chattanooga and the specific players involved in the distribution of powder cocaine and crack cocaine. Jackson stated that he recorded sixteen conversations between Slayton and Benford and that Jackson listened to the recordings with Benford to verify their correctness.

In addition, Nathan Benford testified, with the hope of obtaining a reduction in his sentence on his own conspiracy and money laundering convictions. Benford testified that he sold Slayton drugs on at least four occasions before his arrest, consisting of transactions in both powder cocaine and crack cocaine. He told the jury that Slayton frequently asked for reduced prices or larger quantities of drugs and that Slayton was slow in paying for drugs. According to Benford's testimony, his last transaction with Slayton occurred a day or two before Benford was arrested on July 30, 1998. Benford estimated that altogether he sold Slayton thirty-one and one-half ounces of powder cocaine and nineteen ounces of crack cocaine. Specifically as to the June 5 telephone conversation, at issue in Count Nine, Benford testified that Slayton asked for nine ounces of drugs for $5,500, which Benford felt was not enough money for the amount of drugs. Benford stated that he asked Slayton to talk with him in person about the price and quantity because he did not like

talking about drugs over the telephone. On cross examination, Benford stated that he never completed a transaction with Slayton for the quantity and price suggested by Slayton in the recording. As to the July 10 conversation occurring at 4:16 p.m., forming the basis of Count Twelve, Benford testified that Slayton asked to receive double the amount of drugs that Benford had sold him in the first transaction. According to Benford, Slayton also promised that he would pay Benford for anything that Benford sold him. Benford then instructed Slayton to see him in person so that Slayton would stop talking about drugs over the telephone. The government played three additional conversations between Benford and Slayton from July 10, in which they continued to discuss a possible drug transaction. On cross examination, Benford testified that he met with Slayton on July 10, but he did not remember what happened at the meeting.

B. Facts Related to Counts Fourteen and Seventeen

Counts Fourteen and Seventeen also charged Slayton with violating 21 U.S.C. § 843(b) for using a telephone to facilitate the commission of a conspiracy to distribute powder cocaine and crack cocaine. Both of these Counts involved phone conversations between Slayton and co-conspirator Edward Jackson. Count Fourteen of the indictment charged for an offense that occurred "on or about July 19, 1998, at approximately 8:54 p.m." However, the transcript for the July 19 recording shows that the conversation actually took place at 10:54 a.m. Similarly, Count Seventeen charged Slayton for a phone conversation "on or about July 27, 1998, at approximately 11:47 a.m." Again, the transcript for this July 27 exchange between Slayton and Jackson shows that the conversation began at 11:34 a.m., rather than 11:47 a.m. as charged in the indictment.

In the hopes of having his sentence reduced, Edward Jackson ("Edward") testified at Slayton's trial about the substance of the conversations. Edward testified that he sold Slayton powder cocaine on numerous occasions during the period of the conspiracy. According to Edward, he last sold Slayton cocaine a few days before his arrest on July 30. He also specifically testified about the recordings at issue in Counts Fourteen and Seventeen. In questioning Edward about the conversation at issue in Count Fourteen, the government identified it as a call that took place on July 19 at 10:54 a.m. The government referred to the conversation at issue in Count Seventeen as occurring at 11:34 a.m. Slayton's attorney also questioned Edward about the recordings during cross examination. His attorney acknowledged the days on which the calls took place, but did not specifically address the times.

After the jury returned the verdict, Slayton moved for a judgment of acquittal on Counts Nine and Twelve because he argued that the government failed to carry its burden of showing proof of a conspiracy as to Count Nine and proof that an actual transaction was facilitated as to Count Twelve. In addition, Slayton moved for judgment of acquittal as to Counts Fourteen and Seventeen because no evidence was admitted showing phone calls on July 19 at 10:54 p.m. or July 27 at 11:47 a.m. The district court denied Slayton's motion and determined that a rational jury could find the elements of the offense beyond a reasonable doubt based on the evidence presented. In addition, the district court treated Slayton's claims as to Counts Fourteen and Seventeen as arguments that a material variance occurred between the indictment and the proof at trial. The district court then determined that no variance occurred because the indictment used the terms "approximately" and "on or about." The district court further noted that Slayton could not show prejudice because he had the benefit of

pretrial discovery and should have been alerted to which recordings formed the basis for the charges in Counts Fourteen and Seventeen.

Slayton brings this appeal. He first argues that insufficient evidence exists to sustain the convictions on Counts Nine and Twelve. He also argues that a material variance occurred between the indictment and the proof offered at trial on Counts Fourteen and Seventeen.

**II.**

We begin by addressing Slayton's sufficiency of evidence claim as to Counts Nine and Twelve. In reviewing a claim for sufficiency of evidence, we will uphold a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dietz*, 577 F.3d 672, 677 (6th Cir. 2009) (internal quotations omitted). Under this standard, the defendant bears a very heavy burden because all inferences are drawn in favor of the prosecution. *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). Further, we refrain from independently judging the weight of evidence, and we weigh all credibility issues in favor of the jury's verdict. *Id.*

Under Counts Nine and Twelve, Slayton was convicted of violating 21 U.S.C. § 843(b), which makes it "unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a [drug] felony . . . ." The statute includes a telephone in the definition of "communication facility" and states that each separate use constitutes a separate offense. *Id.* The underlying felony, which Slayton's use of a telephone allegedly facilitated, was conspiracy to distribute powder cocaine and crack cocaine, in violation of 21 U.S.C. § 846.

To sustain a conviction under § 843(b), the government must prove "(1) a knowing or intentional (2) use of a communication facility (in this case, a telephone) (3) to facilitate the commission of a drug offense." *United States v. McGhee*, 854 F.2d 905, 908 (6th Cir. 1988). In defining "facilitate," the Supreme Court recently stated that Congress had something in mind akin to aiding, abetting, or assisting when it used the term. *Abuelhawa v. United States*, 129 S. Ct. 2102, 2106 (2009). Thus, according to *Abuelhawa*, a buyer's use of a telephone to arrange the purchase of small quantities of drugs for personal use does not constitute "facilitating the commission" of a drug-related felony for the purpose of § 843(b). *Id.* at 2107. In addition, a conviction for conspiracy—the underlying felony which Slayton facilitated—requires "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Robinson*, 547 F.3d 632, 641 (6th Cir. 2009) (internal quotations omitted).

In challenging the sufficiency of evidence, Slayton focuses on whether he "facilitated the commission" of the conspiracy through the phone conversations at issue in Counts Nine and Twelve. Slayton argues that because the two conversations in question did not result in a sale, the conversations did not "facilitate" a drug offense, but instead acted to hinder a drug offense. To the extent that Slayton argues that the government had to establish that a specific drug transaction resulted in order to prove "facilitate," his argument fails. This Circuit and numerous others have held that a conviction under § 843(b) for facilitating a conspiracy to distribute drugs can be upheld in the absence of evidence that an immediate transaction resulted from the particular conversation. *See, e.g.*, *United States v. Dixon*, 132 F.3d 192, 200 (5th Cir. 1997) ("[T]he government is only

required to establish that Knox used the telephone to facilitate an attempt to distribute drugs.");

*United States v. Milton*, 62 F.3d 1292, 1294 (10th Cir. 1995) ("[T]o sustain a facilitation conviction

under § 843(b), it [is] not necessary to prove an actual distribution, at least where the defendant was

also convicted of conspiracy."); *United States v. David*, 940 F.2d 722, 735 (1st Cir. 1991) ("Yarden

was . . . convicted . . . for unlawful use of a telephone in facilitation of a conspiracy to possess

cocaine . . . . Thus, actual possession is not required."); *United States v. McLernon*, 746 F.2d 1098,

1106 (6th Cir. 1984) (upholding conviction where defendant stated that "all [the co-conspirators]

can do is wait" in some calls because other calls showed that a transaction eventually occurred).

Thus, the government only had to prove that Slayton's phone conversations facilitated the

conspiracy, not that an actual transaction resulted.

For the same reason, Slayton's argument that the telephone conversations do not support a

conviction based on both powder cocaine and crack cocaine also lacks merit. Slayton claims that

the conversations do not indicate whether he was referring to powder cocaine or crack cocaine, and

thus, insufficient evidence exists to sustain the conviction based on powder cocaine *and* crack

cocaine. However, Slayton's conviction rests on facilitating the *conspiracy* to distribute powder

cocaine and crack cocaine, not facilitating the *distribution* of the two drugs. And a conviction under

§ 843(b) based on conspiracy to distribute powder cocaine and crack cocaine does not require

evidence that Slayton himself distributed both of these drugs. *See United States v. Morris*, 47 F.

App'x 355, 360 (6th Cir. 2002) (noting that the government did not need to prove that defendant

distributed methamphetamine in order to sustain a conviction for conspiracy to distribute

methamphetamine). Thus, so long as the evidence supports that the conversations facilitated the conspiracy to distribute both drugs, the government has met its burden.

Further, the government presented ample evidence from which a reasonable jury could conclude that the phone conversations at issue in Counts Nine and Twelve facilitated the conspiracy to distribute both powder cocaine and crack cocaine. Nathaniel Benford testified at trial that Slayton purchased powder cocaine and crack cocaine from him on numerous occasions, at least one of which occurred *after* the conversations at issue in Counts Nine and Twelve. He also testified that both conversations ended with his instructing Slayton to see him in person to discuss the price and quantity of a possible transaction. Further, the evidence showed that Slayton and Benford had numerous phone conversations about drug transactions after the conversations at issue in Counts Nine and Twelve. And Benford testified that he sold Slayton substantial quantities of both powder cocaine and crack cocaine. Nor does the evidence, taken as a whole, support Slayton's argument that the conspiracy was hindered by the conversations. Thus, a reasonable jury could conclude, based on the evidence presented, that these phone conversations facilitated the ongoing conspiracy to distribute powder cocaine and crack cocaine, even if no agreement was reached in the conversations themselves.

## III.

We now turn to Slayton's challenge to his conviction on Counts Fourteen and Seventeen. In his brief, Slayton argues that a material variance occurred between the indictment and the evidence presented at trial because the indictment contained incorrect times for the recorded phone

conversations. We review a variance claim *de novo*. *United States v. Combs*, 369 F.3d 925, 934 (6th Cir. 2004). Indictment by a grand jury protects an accused's right to notice of the charges against him, which we bear in mind when reviewing for reversible error. *Id.* at 935. Variances are not *per se* prejudicial and do not always require reversal. *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008). Rather, in order to obtain a reversal of his conviction, the defendant must show that (1) a variance occurred and (2) that his substantial rights were affected. *Id.* A variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Nance*, 481 F.3d 882, 886 (6th Cir. 2007). Further, a defendant's substantial rights are affected if the defendant shows "prejudice in his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Kuehne*, 547 F.3d at 683 (internal quotations omitted). The defendant bears these burdens. *Id.*

Slayton has not carried his burden of showing either that a variance occurred or that his substantial rights have been affected. In Count Fourteen, the indictment charged that "on or about July 19, 1998, at approximately 8:54 p.m.," Slayton used a telephone to facilitate a conspiracy to distribute powder cocaine and crack cocaine. However, the July 19 phone conversation introduced at trial occurred at 10:54 a.m., which amounts to a ten hour difference between the indictment and the evidence presented at trial. In addition, Count Seventeen of the indictment charged for a phone conversation that occurred on July 27 "at approximately 11:47 a.m.," but the recorded conversation used at trial began at 11:34 a.m., which amounts to a difference of thirteen minutes. Because the

charges on both counts were based on approximate times, neither of these small differences amounts to a material variance between the indictment and facts used at trial. *See United States v. Manning*, 142 F.3d 336, 340 (6th Cir. 1998) ("[T]he district court was correct in concluding that the 'on or about' language of the indictment was broad enough to encompass the events of August 4, 1995."). And Slayton does not argue that he was charged with, but convicted of, different offenses, which could create a material variance. *See Nance*, 481 F.3d at 886 (noting that a variance can exist if the evidence presented at trial allows the jury to convict for an act different from that charged). Thus, Slayton has not shown a material variance between his indictment and the evidence presented at trial.

Further, even if a difference of ten hours or thirteen minutes could amount to a material variance, Slayton has not shown that his substantial rights were affected by this variance. In denying Slayton's motion for a new trial, the district court noted that Slayton did not question the timing difference at trial and that he had the benefit of pretrial discovery, which should have alerted him to the phone conversations at issue in Counts Fourteen and Seventeen. Slayton argues to this court that he never received discovery related to the specific calls alleged in the indictment. While it is not entirely clear to this court what Slayton received as part of his pretrial discovery, the district court filings indicate that Slayton should have received information on the correct recordings. To begin with, the lower court docket sheet indicates that a pretrial conference was held the day before trial, at which time the parties were supposed to discuss trial exhibits. The docket sheet also indicates that transcripts for the phone conversations occurring on July 19 at 10:54 a.m. and July 27 at 11:34 a.m. were subsequently entered into evidence as exhibits at trial. No other recordings were introduced

at trial for any call occurring on July 19, and the other recording occurring on July 27 was accounted for in Count Eighteen of the indictment.[2] Further, the district court's Discovery and Scheduling Order of March 20, 2007, ordered that upon his request, Slayton be allowed to inspect and copy any relevant written or recorded statements that he made. These docket sheet entries, viewed as a whole, lead to the conclusion that Slayton at least had access to the recordings at issue in Counts Fourteen and Seventeen before trial.

In addition, the government filed a superseding indictment over one month before trial, which contained no additional charges but instead referenced drug quantities in accordance with the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). While the district court granted Slayton's motion to dismiss this indictment on statute of limitations grounds, the superseding indictment should have made Slayton aware of the recordings at issue in Counts Fourteen and Seventeen because the correct times were used in this indictment. Finally, the trial transcripts indicate that the government referred to the correct times when it entered the recordings into evidence and that Slayton was able to defend himself at trial against these charges. Taken as a whole, Slayton has not carried his burden of showing that his substantial rights were affected by the time differences between the indictment and the recordings, such that his trial lacked general fairness. *See Kuehne*, 547 F.3d at 683 (noting that prejudice requires a showing that defendant's trial lacked general fairness).

---

[2]While the government introduced one other July 27 recording at trial, which was not accounted for in the indictment, Slayton does not argue that confusion over which recording formed the basis for Count Seventeen resulted in an unfair trial.

**IV.**

For the foregoing reasons, we affirm Slayton's conviction.