[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 18, 2011
JOHN LEY
CLERK

No. 10-10941

D. C. Docket No. 5:09-cr-00030-RS-AK-8

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AMY COOPER,

Defendant-Appellant.

––––––––––––––––––––––––

Appeal from the United States District Court
for the Northern District of Florida

––––––––––––––––––––––––

(February 18, 2011)

Before BLACK and HULL, Circuit Judges, and HOWARD,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Marcia Morales Howard, United States District Judge for the Middle District of Florida, sitting by designation.

Appellant Amy Cooper appeals her conviction for using a telephone to facilitate the commission of the felony of distribution of cocaine, in violation of 21 U.S.C. § 843(b). Cooper argues she was a "principal" in the purchase of the cocaine and she cannot be found to have facilitated the distribution in light of *Abuelhawa v. United States*, – U.S. –, 129 S. Ct. 2102 (2009). Because the facts support Cooper using a telephone to facilitate the distribution of cocaine, the jury verdict is affirmed.

## I. BACKGROUND

Amy Cooper lived with her boyfriend, Dr. Michael Reed. Twelve to eighteen months before she was arrested, Cooper introduced Reed to a drug dealer, Hector Melara. Cooper was already a cocaine customer of Melara, and Reed soon became a customer as well. Melara testified at trial that he began to sell Reed cocaine both when Reed was with Cooper and when Reed was alone in his office. In early May 2009, Reed contacted Melara and negotiated for the purchase of one kilogram of cocaine for $30,000. Reed planned to pay for the kilogram out of his own bank account because he was trying to "keep [Cooper] out of it" and he intended to tell Cooper he was only buying 7 ½ or 10 grams of cocaine. Melara testified that it was his impression Reed was lying to Cooper and continued to lie to Cooper until the day the deal was to occur.

2

Melara's supplier delivered the cocaine to Melara the same day Melara was supposed to deliver the cocaine to Reed, but the supplier arrived later than expected. Melara called Reed and said he was running late. Reed told Melara he had to go to work, but Melara could still come to Reed's house and Cooper would "do the deal" for him. Reed explained that Cooper was unaware of the quantity of cocaine Melara was bringing to the house, and that he was going to tell Cooper he was "just going to pass it on to someone else," referring to the cocaine.

On his way to deliver the cocaine to Reed's residence, Cooper called Melara and told him she had visitors and Melara should give her ten minutes before he came over. Melara said that was fine, as he was currently driving by a business he knew to be more than ten minutes away from Reed's residence. This was the first conversation Melara had with Cooper regarding the deal. Fifteen minutes later, Cooper called Melara again and told him the guests were gone and to come over.

Melara arrived at Reed's residence and Cooper greeted him at the door. Cooper escorted Melara through the garage to a stairwell leading to the master bedroom closet. She told Melara to look in the closet at the right-hand desk drawer where he would find the money. Melara found the money, counted $30,000, and Cooper double counted it to ensure the accuracy of the payment. Melara then handed the cocaine to Cooper, who felt and smelled it. After the

3

exchange, Melara left the house, followed shortly thereafter by Cooper who was accompanied by another female thought to be the maid. Cooper returned to the house approximately 30 minutes later and was confronted by law enforcement.

Cooper was charged and found guilty of using a telephone to facilitate the commission of a felony, 21 U.S.C. § 841(a)(1), that being the distribution of cocaine, in violation of 21 U.S.C. § 843(b). The district court denied Cooper's motion for a judgment of acquittal at the close of the Government's evidence. It also denied her post-verdict motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c). Cooper now appeals her conviction.

## II. DISCUSSION

This Court reviews "the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government." *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). "All reasonable inferences and credibility choices must be made in favor of the government and the jury's verdict." *Id*.

Cooper makes two main arguments. First, Cooper argues she was a "principal" in the transaction because she was standing in the place of Reed as the buyer. Thus, she concludes, she cannot be found to have facilitated the distribution of cocaine in light of the Supreme Court's holding in *Abuelhawa, –* U.S. –, 129 S. Ct. 2102, 2107 (holding that a buyer using a telephone to make a

4

misdemeanor drug purchase does not "facilitate" felony drug distribution because the term "facilitate" is limited to someone other than a principal or necessary actor).

Cooper was not a "principal" as a stand-in buyer in this transaction. The evidence showed it was Reed, not Cooper, who was the purchaser: (1) Reed initiated the purchase by calling Melara and asking to purchase a kilogram of cocaine; (2) Reed and Melara had multiple conversations to "negotiate" the sale; and (3) Reed supplied the money to purchase the cocaine. In contrast, Cooper was only enlisted at the last minute to help complete the final stages of the transaction. It was in this capacity that she placed calls to Melara. In fact, Cooper only learned the deal involved one kilogram of cocaine the day of the transaction because Reed had previously lied and told Cooper he was only getting 7 ½ or 10 grams of cocaine. Undoubtably, Cooper aided Reed through her actions; however, her actions also aided Melara. Cooper cannot be characterized as the purchaser of the cocaine when her role in the transaction was to aid *both* Reed and Melara. In this regard, *Abuelhawa* is not applicable.

Second, Cooper argues the Government failed to present sufficient evidence that her phone calls facilitated Melara's actions. She contends her phone calls did nothing to help Melara as he was already on his way over to Reed's house.

5

Viewing all the evidence in the light most favorable to the Government, this argument is unpersuasive. Melara testified Cooper's calls assisted him because it was "very important" for him to know no one else was at the house, and "very important" to know that the house would be clear if he waited the time specified by Cooper. Cooper's calls allowed Melara to judge his timing to ensure he and Cooper would be alone when Melara delivered the cocaine. Melara claims he would have been concerned if other people were at the house because others could inform law enforcement about the deal. Therefore, the Government presented sufficient evidence to support a finding that Cooper used a telephone to facilitate Melara's distribution of the cocaine.

### III. CONCLUSION

In conclusion, Cooper was not a "principal" in the transaction and the evidence sufficiently supported the jury's verdict that she used a telephone to facilitate the distribution of cocaine.[1]

**AFFIRMED.**

---

[1] In light of this opinion, Cooper's motion for release pending appeal is now moot.