**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0632n.06

No. 15-1794

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Sep 10, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| LERHUE WILLIAM FREEMAN-PAYNE, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before:  GUY, MOORE, and KETHLEDGE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  A jury convicted LeRhue (aka "Lehrue")

Freeman-Payne of participating in a conspiracy to distribute cocaine and unlawfully using a

communication facility to further that conspiracy.  The district court sentenced him to six

months' imprisonment, followed by three years' supervised release.  Freeman-Payne appeals,

arguing that the evidence against him was insufficient to support his conviction and that, in the

alternative, the district court should have ordered a new trial.  He also argues that his Sentencing

Guidelines range should have been two levels lower, and that his trial counsel was

constitutionally ineffective.[1]  For the reasons set forth in this opinion, we **AFFIRM** the district

court's judgment.

---

[1]We note that Freeman-Payne's counsel includes these latter two arguments that Freeman-Payne wishes to raise.

## I. BACKGROUND

**A. Facts**

This case arises out of a two-year investigation into narcotics trafficking in Wayne County, Michigan. Around Christmas 2009, Freeman-Payne met co-conspirator Jose Rios at a home in Southwest Detroit. R. 419 (Trial Tr. Jose Rios at 60–62) (Page ID #2547–49). Rios had just returned from Sinaloa, Mexico in a white Ford F-150 with three kilograms of cocaine hidden in the transmission. *Id.* at 59, 62–63 (Page ID #2546, 2549–50). Freeman-Payne purchased one kilogram from Rios for $28,000, and the two exchanged phone numbers. *Id.* at 70, 77–78 (Page ID #2557, 2564–65).

Shortly thereafter, Freeman-Payne introduced Rios to his friend, co-conspirator Alexis Rodgers, who purchased a half-kilogram of cocaine from Rios for approximately $14,000. *Id.* at 101 (Page ID #2588); R. 423 (Trial Tr. Alexis Rodgers at 28–32) (Page ID #3096–100). Rodgers soon needed more cocaine. R. 423 (Trial Tr. Alexis Rodgers at 41) (Page ID #3109). On January 31, 2010—in a wiretapped conversation—Rodgers called Freeman-Payne and asked about Rios. *Id.* at 41–44 (Page ID #3109–12). Freeman-Payne arranged another buy. On February 4, 2010, Rios met with Freeman-Payne and Alexis Rodgers, separately, at Freeman-Payne's cousin's home. R. 419 (Trial Tr. Jose Rios at 79–81) (Page ID #2566–68). Rios had just returned from Mexico with another three kilograms of cocaine. *Id.* at 81 (Page ID #2568). Freeman-Payne bought two for $56,000. *Id.* at 82 (Page ID #2569). Later that day, Alexis Rodgers purchased the remaining kilogram for $28,000, and—after asking Freeman-Payne if he

could start reaching out directly to his cocaine source—Alexis asked Rios for his phone number. *Id.* at 82–84 (Page ID #2569–71); R. 423 (Trial Tr. Alexis Rodgers at 50–52) (Page ID #3118–20).

Rios continued transporting cocaine into Michigan. Freeman-Payne continued purchasing and dealing it. On February 19, 2010, Rios and three others—following Freeman-Payne as he drove his own car—towed the white F-150 to Freeman-Payne's aunt's home in Detroit. R. 419 (Trial Tr. Jose Rios at 91–93) (Page ID #2578–80). Once again, there were three kilograms of cocaine in the truck's transmission. *Id.* at 95 (Page ID #2582). After the men unpacked the drugs, Rios, Rios's cousin, and Freeman-Payne sold them for $84,000, vacuum-sealed their cash, and loaded the cash back in the F-150's transmission. *Id.* at 94–98 (Page ID #2581–85).

Rios soon began contemplating a supply increase. On March 25, 2010, about two weeks after Livonia Police secured permission to wiretap his phone, Rios called Freeman-Payne to ask if he could handle dealing twenty "guys" (their code name for kilograms of cocaine) per week. R. 421 (Trial Tr. John Walker at 33) (Page ID #2794); R. 546 (Gov't Ex. 46b at 1–3) (Page ID #4332–34). Freeman-Payne replied: "I'm on it." R. 546 (Gov't Ex. 46b at 3) (Page ID #4334).

But Rios's plan did not come to fruition. On April 25, 2010, DEA agents stopped Rios in his F-150 in Monroe, Michigan. R. 417 (Trial Tr. Robert Ziskie at 69–72) (Page ID #2340–43). With the help of local law enforcement, they disassembled the truck and found six kilograms of cocaine inside. R. 417 (Trial Tr. Eric Marcotte at 17–24) (Page ID #2288–95).

The next morning, police officers searched two residences. One group of officers went to Freeman-Payne's aunt's home. R. 420 (Trial Tr. Nicholas Heinonen at 148–49, 152–53) (Page ID #2743–44, 2747–48). In a basement furnace room, police found digital scales, sandwich bags, a cutting agent, and 35.9 grams of cocaine. *Id.* at 155–64 (Page ID #2750–59); R. 430 (Stipulation) (Page ID #3273). In a different room, they found more plastic bags hidden in a thermos. R. 419 (Trial Tr. Michael Petrovich at 36–39) (Page ID #2523–26). Another group of officers searched a home in Belleville, Michigan. R. 422 (Trial Tr. Dale Labombard at 110–11) (Page ID #3029–30). There, they found a small amount of crack cocaine, marijuana, more digital scales, two cell phones, and Freeman-Payne. *Id.* at 114–29 (Page ID # 3033–48); R. 430 (Stipulation) (Page ID #3273).

## B. Procedural History

A grand jury indicted Freeman-Payne on two counts: conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and unlawfully using a communication facility (a phone) in violation of 21 U.S.C. § 843(b), for his March 25 phone call with Jose Rios. R. 309 at 1–3 (Second Superseding Indictment) (Page ID #1547–49).

Freeman-Payne was tried with co-defendant Larry Rodgers, Alexis Rodgers's father. Rios and Alexis Rodgers—both of whom pleaded guilty and entered into cooperation agreements with the government—testified against Freeman-Payne. At the close of evidence, Freeman-

Payne moved for a Rule 29 judgment of acquittal, which the district court denied. R. 430 (Trial Tr. at 41–43) (Page ID #3288–90).

The jury convicted Freeman-Payne of both counts and acquitted Larry Rodgers. R. 383 (Verdict Form at 1–3) (Page ID #1919–21). But it also found that less than 500 grams of cocaine was "the total amount that [Freeman-Payne] personally participated in, as well as any amounts that were within the scope of his agreement and reasonably foreseeable to him." *Id.* at 1–2 (Page ID #1919–20).

On September 26, 2013, Freeman-Payne again moved for a judgment of acquittal under Rule 29 or, in the alternative, a new trial under Rule 33. R. 398 (R. 29 and R. 33 Mot.) (Page ID #1953). The district court also denied this motion. R. 506 (Dist. Ct. Order 4/22/15) (Page ID #4008).

Because the Probation Office attributed just 35.9 grams of cocaine—the amount police found in his aunt's basement—to Freeman-Payne, his Presentence Report originally calculated his Base Offense Level as 14. R. 503 (Def.'s Sentencing Mem. at 3–4) (Page ID #3961–62). But that report was based on the 2012 Sentencing Guidelines. *Id.* at 4 (Page ID #3962). Amendment 782, which took effect two weeks before Freeman-Payne's sentencing, lowered his Base Offense Level to 12. R. 507 (Gov't's Sentencing Mem. at 3 n.1) (Page ID #4020); R. 545 (Sentencing Hr'g Tr. 6/2/15 at 36) (Page ID #4275).[2] The district court explained this to Freeman-Payne at his sentencing hearing, and—pursuant to Amendment 782—sentenced him to

---

[2]With a Total Offense Level of 12, and a Criminal History Category of II, Freeman-Payne's Sentencing Guidelines range was twelve to eighteen months' imprisonment. *See* Presentence Report ¶ 70.

a below-Guidelines sentence of two concurrent six-month prison terms, followed by three years' supervised release (including six months' home confinement).  R. 545 (Sentencing Hr'g Tr. 6/2/15 at 35–40) (Page ID #4274–79).[3]

## II.  RULE 29

Freeman-Payne first argues that the evidence at trial was insufficient to convict him of either conspiracy to distribute and to possess with intent to distribute cocaine or unlawful use of a communication facility in facilitating the conspiracy.

"We review *de novo* a challenge to the sufficiency of the evidence supporting a criminal conviction."  *United States v. Napier*, 787 F.3d 333, 344 (6th Cir. 2015) (quoting *United States v. Carson,* 560 F.3d 566, 579 (6th Cir. 2009)).  When reviewing such a challenge, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[W]e do not weigh the evidence presented, consider the credibility of the witnesses, or substitute our judgment for that of the jury."  *United States v. Gonzalez*, 512 F.3d 285, 293 (6th Cir. 2008).  "All conflicts in the testimony are resolved in favor of the government, and every reasonable inference is drawn in its favor."  *United States v. Geisen*, 612 F.3d 471, 488 (6th Cir. 2010).  A defendant challenging the sufficiency of the evidence on appeal "[t]hus . . . bears a heavy burden."  *Carson*, 560 F.3d at 580.

---

[3]On July 14, 2015, the district court granted Freeman-Payne's emergency motion to extend his prison reporting date. R. 539 (Dist. Ct. Order 7/14/15) (Page ID #4166).  He is scheduled to self-surrender on September 11, 2015 at noon. *Id.* at 2 (Page ID #4167).

We conclude the evidence presented at trial was sufficient to convict Freeman-Payne of both counts.

## A.  Conspiracy

Conviction under 21 U.S.C. § 846 requires proof of three elements:  "(1) that there was an agreement to violate federal narcotics laws, (2) that [the defendant] had knowledge of and the intent to join the conspiracy, and (3) that [the defendant] participated in the conspiracy."  *United States v. Soto*, 794 F.3d 635, 657 (6th Cir. 2015).  If these three elements are "proven beyond a reasonable doubt . . . a defendant's connection to the conspiracy 'need only be slight,' and a defendant's knowledge of and participation in a conspiracy 'may be inferred from his conduct and established by circumstantial evidence.'"  *United States v. Warman*, 578 F.3d 320, 332–33 (6th Cir. 2009) (quoting *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005)).

Freeman-Payne argues that the evidence that the government adduced at trial proved at most that he used and possessed drugs, but did not sell them.  He claims that no direct evidence—no marked money, drug ledgers, or kilo wrappers—linked him to the alleged conspiracy.  And he argues that whatever circumstantial evidence *did* inculpate him was insufficient to secure conviction.

We disagree.  The jury considered evidence that directly established Freeman-Payne's role in a cocaine conspiracy.  It reviewed physical evidence recovered from two different houses, including scales, baggies, and a cutting agent, consistent with *dealing*, not just using, cocaine.  And it read transcripts of wiretapped communications between Freeman-Payne and his alleged

7

co-conspirators in which Freeman-Payne discussed dealing cocaine. That evidence demonstrated both that a conspiracy existed and that Freeman-Payne was a part of it.

Moreover, ample trial testimony tied Freeman-Payne to the conspiracy. "Testimony by co-conspirators alone can be sufficient to prove the existence of a conspiracy." *Soto*, 794 F.3d at 658 (quoting *United States v. Copeland,* 321 F.3d 582, 600 (6th Cir. 2003)). Just so here. The jury heard testimony from Jose Rios and Alexis Rodgers, both of whom described Freeman-Payne's role in a multi-member cocaine conspiracy. Freeman-Payne argues that their testimony is tainted because both testified against Freeman-Payne (and others) in exchange for lighter sentences. But that argument does not help Freeman-Payne here: "[O]n appeal, there is no place . . . for arguments regarding a government witness's lack of credibility . . . ." *United States v. Deitz*, 577 F.3d 672, 681 (6th Cir. 2009) (quoting *United States v. Talley,* 164 F.3d 989, 996 (6th Cir. 1999)).

In sum, we conclude that a rational jury could have found Freeman-Payne guilty of conspiracy to distribute cocaine beyond a reasonable doubt.

## B.  Unlawful Use of a Communication Facility

Like conspiracy under § 846, a violation of § 843(b) requires proof of three elements: "(1) a knowing or intentional (2) use of a communication facility (3) to facilitate the commission of a drug offense." *United States v. Ugochukwu*, 538 F. App'x 674, 680 (6th Cir. 2013) (quoting *United States v. Dotson,* 871 F.2d 1318, 1321 (6th Cir. 1989)). To "facilitate" under § 843(b) is to "'aid,' 'abet,' [or] 'assist.'" *Abuelhawa v. United States*, 556 U.S. 816, 824 (2009).

Freeman-Payne's conviction on this count stems from his March 25, 2010 phone call with Rios during which Rios discussed increasing his supply of cocaine to twenty "guys" (kilograms) per week. That call was wiretapped, and Freeman-Payne's jury read a transcript of it. But Freeman-Payne argues that that transcript is ambiguous. Although Rios discussed increasing the amount of cocaine he was transporting to Michigan, Freeman-Payne claims that he never actually *agreed* to deal or purchase this increased amount. Thus, Freeman-Payne argues, he did not "facilitate" any crime.

But "[t]his Circuit and numerous others have held that a conviction under § 843(b) for facilitating a conspiracy to distribute drugs can be upheld in the absence of evidence that an immediate transaction resulted from the particular conversation." *United States v. Slayton*, 366 F. App'x 650, 655 (6th Cir. 2010). During their March 25 call, Rios and Freeman-Payne talked about future cocaine distribution plans. Rios told Freeman-Payne that he planned to increase his regular supply. Freeman-Payne said that he would look into increasing his regular sales. And they spoke in the same coded language, referring to kilograms of cocaine as "guys" (or "workers"). We conclude that a rational jury could convict Freeman-Payne of using his phone to facilitate a cocaine conspiracy on the basis of this evidence.

### III. RULE 33

Freeman-Payne next argues that the district court should have granted him a new trial because the jury's verdict was against the manifest weight of the evidence.

We review "the district court's denial of [a] motion for new trial . . . under an abuse of discretion standard." *United States v. Holder*, 657 F.3d 322, 328 (6th Cir. 2011). Rule 33(a) permits a district court judge to order "a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). But granting a new trial because the jury's verdict was against the weight of the evidence is usually appropriate "only in the extraordinary circumstance where the evidence preponderates *heavily* against the verdict." *Id.* (internal quotation marks and citations omitted) (emphasis added). And our review is even more limited. We will reverse a district court's denial of a new trial motion only if "it applie[d] an incorrect legal standard, misapplie[d] the correct legal standard, or relie[d] upon clearly erroneous findings of fact.'" *Holder*, 657 F.3d at 328 (quoting *United States v. Pugh,* 405 F.3d 390, 397 (6th Cir. 2005)).

Freeman-Payne faults the district court for not rejecting Rios's and Rodgers's testimony. His jury, he claims, did just that. Freeman-Payne argues that by attributing less than 500 grams of cocaine to him, the jury implicitly rejected Rios's testimony that he was selling kilos of cocaine to Freeman-Payne. And by acquitting Larry Rodgers, Freeman-Payne contends, the jury discredited Larry's son Alexis (who testified against Larry at trial). Whatever evidence remained, Freeman-Payne argues, was insufficient to establish his guilt.

Again, we disagree. That Freeman-Payne's jury attributed a relatively small amount of cocaine to him and acquitted his co-defendant does not establish that it discredited Rios or Rodgers. It seems more likely that the jury "concluded that each of the government's witnesses was somewhat—but only somewhat—credible, and discounted the testimony accordingly." *United States v. Jackson*, 473 F.3d 660, 670 (6th Cir. 2007). But more importantly, the district court did not abuse its discretion when it acted as a "thirteenth juror" and denied Freeman-Payne's new trial motion. It considered the physical evidence establishing that Freeman-Payne was dealing cocaine. It weighed the testimony of Rios and Rodgers linking Freeman-Payne to the conspiracy. And it concluded that the jury's verdict was not against the manifest weight of the evidence. Accordingly, we affirm the district court's denial of Freeman-Payne's motion for a new trial.

## IV. AMENDMENT 782

Freeman-Payne argues that he should have received a two-level Sentencing Guidelines Offense Level reduction pursuant to Amendment 782. Under the 2012 Sentencing Guidelines, a defendant convicted of an offense involving between twenty-five and fifty grams of cocaine received a Base Offense Level of 14. U.S. Sentencing Guidelines Manual § 2D1.1(c)(13) (U.S. Sentencing Comm'n 2012). But Amendment 782 changed the quantity floors for many offenses listed in the Sentencing Guidelines' Drug Quantity Table. Today, a defendant convicted of an offense involving fifty grams or less of cocaine receives a Base Offense Level of 12. U.S. Sentencing Guidelines Manual § 2D1.1(c)(14) (U.S. Sentencing Comm'n 2014). There is no

lower Base Offense Level for cocaine offenses. *Id.* Because Amendment 782 took effect shortly before Freeman-Payne's sentencing, the district court applied it in calculating Freeman-Payne's sentence. *Id.* § 1B1.11(a). The district court explained this to Freeman-Payne (and his current counsel) at his sentencing hearing.

Freeman-Payne, however, contends that his Base Offense Level should be 10, not 12. He argues that the *actual* amount of cocaine that should be attributed to him is fourteen grams—not 35.9. In support of this argument, he points to the testimony of a DEA Agent at his May 2010 detention hearing, who recalled recovering half an ounce (about 14 grams) of cocaine from Freeman-Payne's aunt's house. And because fourteen grams of cocaine would have resulted in a Base Offense Level of 12 under the 2012 Sentencing Guidelines, Freeman-Payne believes that Amendment 782 reduces his Base Offense Level to 10.

He is mistaken. Amendment 782 did not impose an across-the-board two-level reduction for all drug offenses. Rather, it amended the Drug Quantity Table such that any offense involving fifty grams or less of cocaine—be it 35.9 grams, or 14—results in a Base Offense Level of 12. Freeman-Payne is not entitled to a further sentence reduction.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Freeman-Payne argues that his trial counsel was constitutionally ineffective. We find that the trial record is insufficiently complete to consider this claim, and thus we decline to consider it on direct review. *See, e.g.*, *United States v. Ferguson*, 669 F.3d 756, 762–63 (6th Cir. 2012).

## VI. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment.