PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4729
_____

UNITED STATES OF AMERICA,
                                        Appellant

v.

MELISSA A. HUET
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-08-cr-00215-002)
District Judge:  Honorable Arthur J. Schwab
_____

Argued October 26, 2011
Before:  FISHER, VANASKIE and ROTH, *Circuit Judges*.

(Filed:  January 5, 2012)

Laura S. Irwin (Argued)
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
          *Counsel for Appellant*

Patrick M. Livingston (Argued)
310 Grant Street, Suite 1430
Pittsburgh, PA  15219
        *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

The Government appeals from the order of the District Court dismissing the indictment against Melissa Huet ("Huet") with prejudice.  Huet was charged with aiding and abetting possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and § 2.  The District Court dismissed the indictment on the basis that:  (1) it failed to state an offense for aiding and abetting under § 922(g)(1) and § 2; and (2) even if it did state an offense, the charge violated Huet's rights under the Second Amendment of the U.S. Constitution.  For the reasons set forth below, we will reverse and remand.

I.

On June 5, 2008, a federal grand jury sitting in the Western District of Pennsylvania returned a three-count indictment against Huet and her paramour, Marvin Hall ("Hall").  Counts One and Two, respectively, charged Hall with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and transfer of unregistered firearms, in violation of 26 U.S.C. § 5861(e).  Count Three ("Count Three" or "the Indictment") charged Huet with

2

knowingly aiding and abetting the possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1)[1] and § 2(a)[2]. On January 29, 2010, Hall pled guilty to Count One, and was sentenced to time served. On November 22, 2010, the District Court issued an order dismissing Count Three with prejudice. The Government filed a timely notice of appeal.

The allegations in the Indictment stem from an undercover FBI investigation into the activities of Morgan Jones ("Jones") in Clarion County, Pennsylvania. The investigation focused on attempts to purchase illegal firearms and explosive devices for criminal activities, as well as the potential manufacturing and detonation of explosive devices. During their probe, FBI agents met Hall and Huet, who lived together. Over the next nine months, agents gathered

---

[1] Section 922(g)(1) states:

It shall be unlawful for any person – who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[2] Section 2(a) states: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

evidence allegedly connecting Hall and Huet to various criminal activities, and on June 6, 2008, a valid search warrant (the "search warrant") was executed on the couple's Clarion County home. Agents seized an SKS, Interordnance M59/66 rifle ("SKS rifle") from an upstairs bedroom.

Although Huet is legally permitted to possess a firearm, Hall was convicted in 1999 of possessing an unregistered firearm, in violation of 26 U.S.C. § 5861(d), and is therefore prohibited from owning or possessing a firearm. After being informed of the raid, Huet allegedly told investigators that the guns in the house belonged to her and that it was not illegal for her to purchase weapons. Despite Huet's assertions that she alone possessed the SKS rifle, the Government sought and obtained an indictment charging Hall with illegal possession of the weapon, and Huet with aiding and abetting Hall's possession.

Huet moved to dismiss Count Three pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure[3] on the basis that the Indictment failed to state an offense under § 922(g)(1) and § 2. Count Three states:

> From on or about August 10, 2007, to on or about January 11, 2008, in the Western District of Pennsylvania, the defendant, Melissa A. Huet, knowingly and unlawfully aided and abetted the possession of a firearm, that is an SKS assault rifle, in and affecting interstate

---

[3] Rule 12(b)(3)(B) provides: "[A]t any time while the case is pending, the court may hear a claim that the indictment . . . fails to . . . state an offense."

4

commerce, by Marvin E. Hall, who had previously been convicted on or about March 12, 1999, in the United States District Court for the Western District of Pennsylvania . . . of the crime of Possession of Unregistered Firearms, an offense which is punishable by a term of imprisonment in excess of one year. In violation of Title 18, United States Code, Sections 922(g)(1) and 2.

In granting Huet's Rule 12 motion, the District Court stated that "notably absent from the Indictment . . . [were] any facts setting forth *how* defendant Huet aided and abetted defendant Hall in his unlawful possession of the SKS rifle." *United States v. Huet*, No. 08-0215, 2010 WL 4853847, at \*5 (W.D. Pa. Nov. 22, 2010). The District Court did not limit its inquiry to the four corners of the Indictment, however, and examined additional information to discern the Government's theory of the case. The District Court looked to materials produced pursuant to Rule 16 of the Federal Rules of Criminal Procedure, as well as record evidence from Hall's case. Specifically, the Court relied upon statements set forth in the affidavit of probable cause supporting the search warrant,[4] and remarks made by the prosecutor during Hall's

---

[4] The affidavit provides, in pertinent part:

> Huet indicated that she was angry that Hall had been showing off an SKS assault rifle. Huet said that if it happened again, she would take it "back" to Morgan. Huet further elaborated that she was worried that if Hall "gets in trouble with that, I get in trouble too. Cause it's in my name, and he's got it."

guilty plea hearing.[5]  Concluding that this evidence failed to establish any connection between Huet's actions and Hall's possession, the District Court granted Huet's Rule 12 motion to dismiss for failure to state an offense under 18 U.S.C. § 922(g)(1) and § 2.  *Huet*, 2010 WL 4853847, at \*7.

The District Court's view of the Government's theory of the case similarly guided its approach to Huet's Second Amendment challenge.  Huet argued that even if Count Three did state an offense for aiding and abetting a felon in possession, under the factual scenario presented in this case, the charge violated her rights under the Second Amendment. The District Court agreed, finding that "to permit [the] Indictment to go forward . . . would be [to] countenanc[e] the total elimination of the right of a sane, non-felonious citizen to possess a firearm, in her home, simply because her paramour is a felon."  *Id.* at \*11.  "[T]o punish Huet, who has not been convicted of a felony . . . as a principal, violates the core of the Second Amendment right to keep arms," the Court opined, because the conduct alleged to have aided and abetted was "purely possessory."  *Id.* at \*7; *see id.* at \*11 (characterizing Government's case as an attempt to

---

[5] At Hall's guilty plea hearing, the Assistant U.S. Attorney stated:

> Mr. Hall lived with . . . Melissa Huet, . . . [who] had no prior record of which we are aware, but . . . bought firearms in her name for Morgan Jones, who on the side sold firearms. . . . Miss Huet would allow Mr. Hall to have access to those firearms.  In essence, that's the very basis of the charge against Mr. Hall.

"compound[] an inchoate offense upon another inchoate offense"). Although the District Court did not explicitly designate the Second Amendment violation as an alternative basis for dismissal, it clearly viewed it as such. Accordingly, we must address both the sufficiency of the Indictment and the Second Amendment challenge.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over the District Court's order dismissing the Indictment under 18 U.S.C. § 3731. "[W]hen reviewing a motion to dismiss an indictment, our standard of review is mixed." *United States v. Shenandoah*, 595 F.3d 151, 156 (3d Cir. 2010) (citations omitted). We exercise plenary review over the District Court's legal conclusions and review any challenges to its factual findings for clear error. *Id.* Here, the primary question is not whether the District Court's findings of fact were erroneous, but whether the District Court was entitled to find and weigh facts at all. This is a legal question, over which we exercise plenary review. *Id.* We also exercise plenary review over a constitutional challenge to the application of a statute. *United States v. Marzzarella*, 614 F.3d 85, 88 n.2 (3d Cir. 2010) (citing *United States v. Fullmer*, 584 F.3d 132, 151 (3d Cir. 2009)).

## III.

### A.

We first address the Government's contention that the District Court erred in concluding that, under Federal Rule of Criminal Procedure 12(b)(3)(B), Count Three failed to state

an offense for aiding and abetting a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and § 2.

1.

Federal Rule of Criminal Procedure 7(c)(1) requires only that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "[T]he Federal Rules 'were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure.'" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (quoting *United States v. Debrow*, 346 U.S. 374, 376 (1953)). Although detailed allegations may have been required under a common law pleading regime, they "surely are not contemplated by [the Federal Rules]." *Id.*

"It is well-established that '[a]n indictment returned by a legally constituted and unbiased grand jury, . . . *if valid on its face*, is enough to call for trial of the charge on the merits.'" *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007) (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)). We have held that an indictment is facially sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Id.* at 321 (citation omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation" to permit a defendant to prepare his defense and invoke double jeopardy. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d. Cir. 1989)).

8

Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred. *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005); *see also United States v. McCarty*, 862 F.2d 143, 144, 148 (7th Cir. 1988) (finding indictment under 18 U.S.C. § 922(g) sufficient where it tracked the statutory language, stated the date and place of the alleged possession, and specifically identified the type of firearm involved). In contrast, if an indictment fails to charge an essential element of the crime, it fails to state an offense. *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979).

In determining whether an indictment validly states the elements of the offense, we need not blindly accept a recitation in general terms of the elements of the offense. *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002). "Federal Rule of Criminal Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to . . . ensur[e] that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011). Although the Government is not required to set forth its entire case in the indictment, "if the specific facts" that are alleged "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation," the indictment fails to state an offense. *Panarella*, 277 F.3d at 685; *see United States v. Schiff*, 602 F.3d 152, 162-66 (3d Cir. 2010) (finding that indictment alleging "failure to rectify misstatements of others" did not, as a matter of statutory interpretation, state an offense under 18 U.S.C. § 78j(b) and SEC Rule 10b-5). However, the scope of a district court's review at the Rule 12 stage is limited. "[A] pretrial motion to

9

dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000) (citations omitted). "The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *Id.* at 661. There is no criminal corollary to the civil summary judgment mechanism. *Id.* In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment. *United States v. Sampson*, 371 U.S. 75, 78-79 (1962); *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). "Evidentiary questions – such as credibility determinations and the weighing of proof – should not be determined at this stage." *Bergrin*, 650 F.3d at 265 (internal marks and citation omitted). Thus, a district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged. *Panarella*, 277 F.3d at 685; *DeLaurentis*, 230 F.3d at 660.

2.

To survive Huet's motion to dismiss, the Government was required to adequately set forth the elements of aiding and abetting a felon in possession under 18 U.S.C. § 922(g)(1) and § 2. To establish a violation of 18 U.S.C. § 2, the government must prove: "(1) that the substantive crime has been committed; and (2) that the defendant charged with aiding and abetting knew of the commission of the substantive offense and acted with intent to facilitate it." *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) (citation omitted). Section 922(g)(1), the statute setting forth

10

the substantive offense, requires proof that: (1) the defendant has been convicted of a crime of imprisonment for a term in excess of one year; (2) the defendant knowingly possessed the firearm; and (3) the firearm traveled in interstate commerce. *United States v. Higdon*, 638 F.3d 233, 239-40 (3d Cir. 2011). Because § 922(g)(1) is not a specific intent statute, an individual can be convicted as an aider and abettor under § 922(g)(1) and § 2 if she knew or had reason to know that she was aiding and abetting possession of a firearm by a convicted felon. *See United States v. Xavier*, 2 F.3d 1281, 1286-87 (3d Cir. 1993). Thus, a valid indictment under § 922(g)(1) based on an aiding and abetting theory must allege that: (1) the principal, who had been convicted of a crime carrying a term of imprisonment in excess of one year, knowingly possessed a firearm that had traveled in interstate commerce, *Higdon*, 638 F.3d at 239-40, and (2) the defendant knew or had reason to know that the principal was prohibited from possessing a firearm, *Xavier*, 2 F.3d at 1286-87, and rendered actual aid or assistance to the principal in possessing the firearm, *United States v. Nolan*, 718 F.2d 589, 592 (3d Cir. 1983).

In this case, we conclude that the Indictment adequately set forth the required elements under § 922(g)(1) and § 2, with "sufficient factual orientation" to allow Huet to prepare her defense and invoke double jeopardy. *See Kemp*, 500 F.3d at 280. Count Three lists all required elements of the offense. It alleges that: (1) Hall, the principal, had previously been convicted for Possession of Unregistered Firearms, an offense punishable by a term of imprisonment in excess of one year, and that he knowingly possessed a firearm (the SKS rifle) which had traveled in interstate commerce, *see Higdon*, 638 F.3d at 239-40; and (2) Huet knowingly aided

11

and abetted Hall's possession of that firearm, *see Petersen*, 622 F.3d at 208; *Xavier*, 2 F.3d at 1286-87. Count Three also includes the required "factual orientation": it specifies the time period during which the violation occurred ("on or about August 10, 2007, to on or about January 11, 2008"), *see Urban*, 404 F.3d at 771, and identifies the specific weapon involved, *see McCarty*, 862 F.2d at 144. No more was required to allow Huet to prepare her defense and invoke double jeopardy. *See Kemp*, 500 F.3d at 280. Accordingly, we will reverse the order of the District Court granting Huet's Rule 12(b)(3)(B) motion to dismiss for failure to state an offense.[6]

We recognize that the District Court may have adopted the novel procedure followed here to truncate what it perceived as an incurably weak Government case. However, in doing so, the District Court committed two errors: (1) it impermissibly expanded the scope of its review at the Rule 12 stage and evaluated the sufficiency of the evidence; and (2) it required the Government to meet a heightened pleading standard. We will discuss each of these issues in turn.

First, although the District Court purported to make a purely "legal" determination based on "undisputed" facts, *Huet*, 2010 WL 4853847, at *2, the language of its memorandum opinion makes clear that it engaged in fact-finding and determined that, based on those facts, the Government would not be able to prove its case. The District

---

[6] Because we conclude that the Indictment should not have been dismissed, we do not address whether the District Court abused its discretion by dismissing the Indictment with prejudice.

Court speculated as to the evidence the Government would introduce at trial, and concluded that such evidence "[did] nothing to advance the cause that defendant Huet knew, or had reason to know that defendant Hall was a felon in possession *and* that her owning a weapon somehow aided or abetted him in his unlawful possession of the SKS rifle." *Id.* at *7. By doing this, the District Court failed to adhere to the fundamental principle that in reviewing the sufficiency of an indictment, a court must accept as true all of the facts alleged. *Panarella*, 277 F.3d at 681; *see United States v. Gallagher*, 602 F.2d 1139, 1142-43 (3d Cir. 1979). "Evidentiary questions – such as . . . the weighing of proof – should not be determined at [the motion to dismiss] stage." *Bergrin*, 650 F.3d at 265 (citation omitted).

Unlike other cases in which we have affirmed a district court's dismissal of an indictment as insufficient, Huet's case does not involve a question of whether the facts alleged in the indictment fall beyond the scope of the relevant criminal statute as a matter of statutory interpretation. *See Panarella*, 277 F.3d at 685; *see also Schiff*, 602 F.3d at 161, 167 (holding that failure to rectify the misstatements of others does not state an offense under federal securities laws and thus the government could not proceed on such a theory); *Gov't of the Virgin Islands v. Greenidge*, 600 F.2d 437, 438 (3d Cir. 1979) (finding indictment for assault with intent to commit rape under 14 V.I.C. § 295(3) insufficient where the facts alleged showed that the person the defendant assaulted

13

was not the same person he attempted to rape).[7]  Rather, the District Court's determination that the Indictment failed to state an offense was based solely on its assessment of the strength of the Government's case.

Moreover, although we have left open the possibility that, in limited circumstances, a district court may be able to address the sufficiency of the government's evidence in a pretrial motion to dismiss, this case does not present such a scenario.  *See DeLaurentis*, 230 F.3d at 660 (acknowledging that district courts may be able to address sufficiency of the evidence if there is a stipulated record or if immunity issues are implicated).[8]  The District Court erred in concluding that

---

[7] The only potential question of statutory interpretation – whether the SKS rifle was a "dangerous" or "unusual" firearm – was determined by the District Court when it took judicial notice of the fact that the SKS rifle was not an "assault weapon," but instead had been designated as a "curio" by the Bureau of Alcohol, Tobacco, and Firearms, and was used primarily by hunters and collectors.  *See United States v. Huet*, No. 08-0215, 2010 WL 4853847, at *4-5 (W.D. Pa. Nov. 22, 2010).  That finding is not at issue on appeal.

[8] Although *DeLaurentis* indicated that there is an exception to the general rule barring district courts from considering the sufficiency of the evidence at the Rule 12 stage, we have never explicitly held that such an exception exists, much less defined its contours.  We decline to do so now.  We simply hold that, assuming an exception exists for cases involving a stipulated record or immunity issues, the circumstances of this case do not trigger it.

the facts here are undisputed. The Government maintains that it will introduce testimony to prove the elements of aiding and abetting. At no point during the proceedings before the District Court did the Government concede that the facts were undisputed or were complete. In its reply to Huet's motion to dismiss, the Government explicitly stated that it was "prepared to present testimony" at trial that would establish that Huet aided and abetted Hall's possession. The Government maintains this position on appeal. Thus, the District Court's finding that the Government lacked evidence beyond mere possession was premature.[9]

---

[9] We note that there is a split among our sister circuits as to whether a district court is ever permitted to rule on a motion to dismiss based on the sufficiency of the evidence. Some courts have indicated that in "rare" and "unusual" cases, it may be appropriate for a court to look to the sufficiency of the evidence. *See*, *e.g.*, *United States v. Levin*, 973 F.2d 463, 466-67 (6th Cir. 1992) (affirming district court's dismissal of an indictment under Rule 12 where the prosecutor conceded that the facts were undisputed, and based on the undisputed facts, the defendant could not have formed the requisite intent to commit the crime). Other circuits have rejected this approach. *See*, *e.g.*, *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (holding that "there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure" and thus, the government should be allowed to present its evidence at trial, subject to the defendant's moving for a judgment of acquittal under Federal Rule of Criminal Procedure 29).

Second, the District Court erred to the extent that it imposed a heightened pleading standard for offenses under 18 U.S.C. § 922(g)(1) and § 2. The District Court dismissed Count Three based on its determination that "[t]he facts in the Indictment fail[ed] to set forth *any* allegations to support the conclusion that . . . Huet aided and abetted . . . Hall in his unlawful possession of the SKS rifle." *Huet*, 2010 WL 4853847, at \*7. The District Court faulted the Government for failing to include "any specifics" as to how Huet aided Hall, and determined that the Government simply "charge[d] its conclusion." *Id.* at \*4. Although some offenses must be pled with greater specificity than the "plain, concise, and definite written statement" contemplated by Rule 7(c)(1), we have never held aiding and abetting a felon in possession under 18 U.S.C. § 922(g)(1) and § 2 to be such an offense, and we decline to do so now.

In arguing for a heightened pleading standard, Huet attempts to distinguish the Supreme Court's decision in *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007). In that case, the issue was whether an indictment alleging attempted illegal reentry into the United States under 8 U.S.C. § 1326(a) had to allege a specific overt act. *Id.* at 103-04. The Court held that the government did not have to include such an allegation because the use of the word "attempt," coupled with the specification of the time and place of the defendant's attempted reentry, was sufficient to put the defendant on notice of the charges against him. *Id.* at 108. The Court distinguished the heightened pleading requirements under 2 U.S.C. § 192, which makes it illegal for a witness summoned before a congressional committee to refuse to answer any question "pertinent to the question under inquiry." *Id.* at 109. Because the "relevant hearing's subject

16

[is] frequently uncertain but invariably 'central to every prosecution under the statute,'" the Court explained that an indictment under § 192 must go beyond the language of the statute and "allege the subject of the congressional hearing in order to determine whether the defendant's refusal was 'pertinent.'" *Id.* (citing *Russell v. United States*, 369 U.S. 749, 764 (1962)). In contrast, because the term "attempt," as used in "common parlance," connotes action and intent, it was deemed unnecessary to specify an overt act in an indictment under 8 U.S.C. § 1326(a). *Id.* at 107. Huet argues that because "a single affirmative act" may establish an aider and abettor's culpability, a "concise statement as to [the] means and/or manner the aider/abetter (sic) used to facilitate the offense is required." We find Huet's attempt to distinguish "aid and abet" from "attempt" unpersuasive. Like the term "attempt," the terms "aid" and "abet," as used in common parlance, sufficiently connote action and intent. *See Resendiz-Ponce*, 549 U.S. at 107. Thus, unlike 2 U.S.C. § 192, no more than the elements of the statute and the time and place of the alleged violation are required to inform the defendant of the charge against which she must defend and enable her to invoke double jeopardy. *See Kemp*, 500 F.3d at 280.

Moreover, the District Court's suggestion that *Abuelhawa v. United States*, 129 S. Ct. 2102 (2009), altered the pleading requirements for offenses involving accomplice liability is a mischaracterization of the Supreme Court's holding in that case. In *Abuelhawa*, the Court held that making a misdemeanor drug purchase over the telephone does not constitute "facilitation" of drug distribution under 21 U.S.C. § 843(b). *Id.* at 2104. Nowhere in the *Abuelhawa* opinion did the Court address the pleading requirements

17

under Federal Rule of Criminal Procedure 7. Nor did the decision modify the law of accomplice liability under 18 U.S.C. § 2. The elements of aiding and abetting under § 2 remain the same. The *Abuelhawa* Court simply addressed a narrow question regarding the scope of the term "facilitate" under § 843(b). 129 S. Ct. at 2104. We decline to extend its holding any further.

B.

1.

We turn now to Huet's Second Amendment challenge. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), the Supreme Court held for the first time that the Second Amendment confers an individual right to keep and bear arms.[10] The right, however, is not unlimited. *Id.* The Second Amendment does not guarantee a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. The Court cautioned that, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. Laws prohibiting the possession of "dangerous and unusual weapons" were left similarly intact. *Id.* at 627. The Court made clear that it was "identify[ing] these presumptively

---

[10] In *McDonald v. City of Chi.*, 130 S. Ct. 3020, 3050 (2010), a splintered plurality of the Supreme Court held that the Second Amendment is applicable to the states, through the Fourteenth Amendment.

19

lawful regulatory measures only as examples"; the list was not intended to be exhaustive.[11] *Id.* at 627 n.26.

Applying these principles, the Court invalidated a District of Columbia law that completely banned handgun possession in the home and required any lawful firearm to be kept disassembled and bound by a trigger lock at all times, rendering it inoperable. *Id.* at 628-35. The Court explained that "the inherent right of self-defense [is] central to the Second Amendment[,]" and the challenged law impermissibly extended to the home, "where the need for defense of self, family, and property is most acute." *Id.* at 628. Although the Court did not decide on a level of scrutiny to be applied in cases involving Second Amendment challenges, it rejected rational basis review. *Id.* at 628 n.27. The Court explained that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635.

---

[11] Although some of our sister circuits have classified the "presumptively lawful" language in *Heller* as dicta, *see United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (Tymkovich, J., concurring), we disagree. In *United States v. Barton*, 633 F.3d 168, 171 (3d Cir. 2011), we explicitly held that *Heller*'s list of "presumptively lawful" regulations was not dicta, and thus we are bound by it. *See also United States v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010); *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (explaining that *Heller* Court's "presumptively lawful" list was a limitation on the scope of its holding).

In *United States v. Marzzarella*, we articulated a two-step analysis for Second Amendment claims under *Heller*:

> First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. . . . If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

614 F.3d 85, 89 (3d Cir. 2010) (internal citations omitted).

Under the *Marzzarella* framework, the "presumptively lawful" regulatory measures identified by the Supreme Court in *Heller* carry the presumption of validity because they regulate conduct "falling outside the scope of the Second Amendment's guarantee." *United States v. Barton*, 633 F.3d 168, 172 (3d Cir. 2011) (citing *Marzzarella*, 614 F.3d at 91) (explaining that this is a better reading of *Heller* than one that would require "presumptively lawful" regulations to satisfy every level of constitutional scrutiny). In other words, the longstanding limitations mentioned by the Court in *Heller* are exceptions to the right to bear arms. *Marzzarella*, 614 F.3d at 91.

2.

The constitutional question here is presented in an unusual way due to the procedural posture of the case. The District Court's characterization of Huet's challenge as an as-applied attack is somewhat misleading. In contrast to a facial

attack, an as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citation omitted). However, because we do not have the benefit of a fully developed evidentiary record, the "particular circumstances" of this case remain unclear. As in its analysis regarding the sufficiency of the Indictment, the District Court's error on the constitutional issue stems from its failure to accept as true the allegations in the Indictment. Because, as we explained above, the charges against Huet were properly brought under Federal Rules of Criminal Procedure 7 and 12, in assessing Huet's constitutional challenge on appeal, we are limited to determining whether, based on the allegations in the Indictment – and only the allegations in the Indictment – her Second Amendment rights have been violated. For the reasons set forth below, we conclude that a charge properly brought under § 922(g)(1) and § 2 does not violate the Second Amendment.

Huet argues that based on the circumstances of her case, she cannot constitutionally be charged with aiding and abetting a felon to possess a firearm. Specifically, she contends that the Government's only evidence is that she possessed the SKS rifle in her home while living with a convicted felon. The District Court agreed, finding that "to permit [the] Indictment to go forward" would be to "countenance[e] the total elimination of the right of a sane, non-felonious citizen to possess a firearm, in her home, simply because her paramour is a felon." *Huet*, 2010 WL 4853847, at *11.

22

We disagree. We cannot say that an indictment which properly alleges aiding and abetting a felon in possession under 18 U.S.C. § 922(g)(1) and § 2 violates the Second Amendment under *Heller*. Applying *Marzzarella*, a properly-brought aiding and abetting charge does not burden conduct protected by the Second Amendment. *See* 614 F.3d at 89. The District Court's characterization of the Indictment as seeking to criminalize the otherwise legal possession of a firearm by a non-felon simply because she lives with a felon is misleading. The Indictment does not allege that Huet's possession of the SKS rifle violated the law; rather, it alleges that Huet aided and abetted Hall to possess the firearm. We are mindful of the risk that felon dispossession statutes, when combined with laws regarding accomplice liability, may be misused to subject law-abiding cohabitants to liability simply for possessing a weapon in the home. However, in this case, the District Court's determination that the Government overreached was premature. Huet's arguments regarding the circumstances of her possession must await further development of the evidentiary record.

Huet's argument that her status as a non-felon brings her case within the scope of Second Amendment protection is unavailing. Relying on our decision in *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011), Huet argues that, as a person legally entitled to own a firearm, she is categorically different than a felon, and thus cannot be charged under § 922(g)(1) for possessing a firearm. This argument is flawed. Huet's status in relation to prohibited persons is irrelevant. She is correct that her circumstances distinguish her from "persons historically barred from Second Amendment protections"; she is not barred from Second Amendment protection at all. The Government readily

23

concedes that Huet would not violate § 922(g)(1) simply by possessing a firearm. She would, however, violate § 922(g)(1) *and § 2* by aiding and abetting a felon to possess a firearm. Count Three charges her with the latter. Thus, the fact that she is not within the class of persons prohibited from possessing a firearm is irrelevant; her right to possess a firearm is not implicated by the charges against her. Moreover, even if part of the conduct that allegedly aided and abetted Hall's possession involved possession of the firearm by Huet, the Second Amendment does not afford citizens a right to carry arms for "any purpose." *Heller*, 554 U.S. at 595. Huet's right to keep the SKS rifle in her home did not give her the right to facilitate Hall's possession of the weapon. Otherwise illegal conduct does not somehow become immunized because possession of a firearm is involved in the offense. *See*, *e.g.*, *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) (per curiam) (rejecting a defendant's challenge to his conviction for possession of a firearm in furtherance of drug trafficking and concluding that "[e]ven if [the defendant] kept the firearm *also* to protect himself and his home," it could not "seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*").

Because the conduct alleged in Count Three is beyond the scope of Second Amendment protection, our inquiry under *Marzzarella* is complete. *See* 614 F.3d at 89. We need not conduct a means-end inquiry. *See id.* However, in *Marzzarella*, we cautioned that because Second Amendment jurisprudence is "in its nascency," we must tread carefully when deciding whether to find conduct not explicitly identified by the *Heller* Court as subject to "presumptively lawful" restrictions as unprotected by the Second

24

Amendment. *Id.* at 101. In other words, prong one of *Marzzarella* (whether conduct is protected by the Second Amendment) should be applied with caution. Because we could not be certain that the provision at issue in *Marzzarella*, 18 U.S.C. § 922(k), which prohibits possession of a firearm with an obliterated serial number, regulated conduct not protected by the Second Amendment, we declined to decide the case on prong one. *Id.* at 94-95. However, because it is clear to us that the allegations in Count Three fall outside the scope of Second Amendment protection, we do not hesitate to base our decision on prong one of *Marzzarella* in this case.

Our primary concern in *Marzzarella* was one of line-drawing, specifically, whether a firearm with an obliterated serial number was a "dangerous and unusual weapon." 614 F.3d at 87, 94-95. Although the Court in *Heller* stated that possession of "dangerous" firearms is not protected, it did not define what constitutes a "dangerous" firearm. *See* 554 U.S. at 627. In *Marzzarella*, we noted the difficulty in determining whether a gun with an obliterated serial number was "dangerous" or "unusual." 614 F.3d at 101. On the one hand, because an unmarked firearm is equally effective as a marked firearm, thus giving law-abiding citizens no reason to prefer the former over the latter, unmarked firearms "have value primarily for persons seeking to use them for illicit purposes." *Id.* at 95 (citations omitted). On the other hand, the absence of a serial number seems categorically different than other "dangerous" characteristics, such as a sawed-off barrel on a shotgun. *Id.* Although a sawed-off shotgun "is dangerous and unusual in that its concealability fosters its use in illicit activity, it is also dangerous and unusual because of its heightened capability to cause damage." *Id.* (citing *United*

*States v. Amos*, 501 F.3d 524, 532 (6th Cir. 2007) (McKeague, J., dissenting)).

Huet's case presents no line-drawing problem. Because § 922(g)(1) and § 2 do not restrict the right of possession of the aider and abettor, Count Three simply does not implicate Huet's rights under the Second Amendment. Thus, unlike the restriction at issue in *Marzzarella*, we do not have to broaden any of *Heller*'s presumptively valid categories to find that the conduct alleged in Count Three is outside the scope of Second Amendment protection. *See Marzzarella*, 614 F.3d at 101.

IV.

For the foregoing reasons, we will reverse the order of the District Court granting Huet's motion to dismiss and remand for further proceedings. We hold that: (1) Count Three was sufficient to state an offense for aiding and abetting a felon in possession under 18 U.S.C. § 922(g)(1) and § 2; and (2) Count Three does not violate the Second Amendment.