**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4015
_____

UNITED STATES OF AMERICA

v.

LAMAR STATEN,
                              Appellant

No. 12-4035

UNITED STATES OF AMERICA

v.

EMMANUEL DURAN, a/k/a Manny, a/k/a Manny Yunk

Emmanuel Duran,
                              Appellant

No. 12-4096

UNITED STATES OF AMERICA

v.

JOHN BOWIE, a/k/a HEADS

John Bowie,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 10-cr-00605-001/002/003)
District Judge:  Honorable Legrome D. Davis
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 24, 2014

Before:  FUENTES, GREENBERG, and VAN ANTWERPEN, Circuit Judges

(Opinion Filed: June 10, 2014)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

Emmanuel Duran, John Bowie, and Lamar Staten appeal their convictions for

conspiracy, robbery, and firearms offenses.[1] For the reasons that follow, we affirm.

**I.**

This case arises from a crime spree that took place on the evening of March 24,

2010 and extended into the following day. During this period, Duran, Bowie, Staten,

Jacklyn Smith,[2] and two unidentified confederates robbed Smith's ex-boyfriend, Brandon

Coleman, who they believed was a drug dealer. In furtherance of their plan to obtain

drugs and drug proceeds, the conspirators beat and tortured Coleman and his cousin,

_____

[1] Duran, Bowie, and Staten filed separate appeals (respectively, Nos. 12-4034, 12-4096, and 12-4015), but we will address them together because they involve the same underlying facts and the same jury trial.
[2] Smith was originally named in this criminal action, but pled guilty on October 6, 2010. She later testified at the defendants' trial as a cooperating co-defendant.

invaded two homes at gunpoint, and engaged in a shootout while attempting to rob a third home. Five days later, Duran and Staten robbed a deli to obtain money to pay for a lawyer for Smith, who had been identified by the authorities by this point.

Duran was arrested in May 2010, and Bowie and Staten were arrested in June 2010. Bowie made two statements to the police following his arrest. Immediately after his arrest on June 10, 2010, Bowie waived his *Miranda* rights and admitted to possessing a Glock 27 handgun. Then, on June 23, 2010, while Bowie was still in custody, his uncle informed the police that Bowie wished to speak with them again. As a result, FBI Special Agent William Brooks and Philadelphia Police Detective Joseph Murray went to the Southwest Detective Division to interview Bowie. The officers advised Bowie of his *Miranda* rights, at which point he told them that he wanted to speak with his lawyer. Questioning immediately ended, and Bowie called his lawyer's office. When the phone call concluded, Bowie informed the officers that his lawyer was not in the office, but that another lawyer had advised him to wait for his attorney's arrival at the detective division. Bowie then spoke to his grandmother, who also beseeched him not to make a statement without his lawyer.

Following these phone calls, Bowie, on his own volition, informed the officers that he wanted to make a statement without waiting for his lawyer. The officers once more advised Bowie of his *Miranda* rights, and he waived those rights. Bowie then admitted to participating in the kidnapping and beating of Coleman and the three home invasions. The officers reminded Bowie of his *Miranda* rights multiple times and advised him that he could stop talking at any time. Each time, Bowie responded that he wanted to

3

continue. After Bowie finished giving his statement, he reviewed and signed each page of the statement.

Ultimately, Duran, Bowie, and Staten were charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); five counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); five counts of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Not every defendant was charged in each count.

After filing numerous pretrial motions, which the District Court denied, Duran, Bowie, and Staten proceeded to trial, and the jury returned guilty verdicts on all counts against them. The defendants subsequently filed post-trial motions under Federal Rules of Criminal Procedure 29, 33, and 34. The District Court denied these motions, and they appealed.[3]

## II.

## A.

The defendants contend that the government did not sufficiently establish interference with interstate commerce to uphold a prosecution under the Hobbs Act.[4] The crux of their argument is that, because Coleman was not dealing drugs by the time of

---

[3] We have jurisdiction over this matter under 28 U.S.C. § 1291.

[4] In determining whether a jury verdict rests on legally sufficient evidence, we "must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citations and internal quotation marks omitted).

their robbery spree, the robberies targeted private individuals, rather than businesses engaged in interstate commerce. The defendants raised this argument to the District Court in their Rule 29 motion for a judgment of acquittal. The District Court rejected the defendants' argument, explaining that any interference with or effect on interstate commerce, whether slight or potential, is sufficient to uphold a Hobbs Act prosecution. Bowie App. 33 (citing *United States v. Shavers*, 693 F.3d 363, 372 (3d Cir. 2012)). The District Court correctly noted that a Hobbs Act violation can be established "even if 'the ends of the conspiracy were from the very inception of the agreement objectively unattainable,' so long as the agreed-upon acts 'would have affected commerce,' if successfully completed." *Id.* (quoting *United States v. Jannotti*, 673 F.2d 578, 591-92 (3d Cir. 1982)). Moreover, the District Court explained that "the robbery of a drug dealer whose product originates outside Pennsylvania has a direct nexus to interstate commerce" for Hobbs Act purposes. *Id.* (quoting *United States v. Walker*, 657 F.3d 160, 182 (3d Cir. 2011)). Ultimately, the court concluded that there was a sufficient basis for a Hobbs Act prosecution because: the defendants committed three home invasions with the intent to obtain drugs and drug proceeds, and expert testimony indicated that cocaine and marijuana, the drugs that the defendants thought Coleman sold, are grown and harvested outside of Pennsylvania and brought into the state for sale. For substantially the same reasons set forth by the District Court, we hold that the government sufficiently established interference with interstate commerce.

**B.**

5

Additionally, the defendants argue that the District Court improperly joined the counts relating to the deli robbery and the counts relating to the previous robberies, and they claim that the District Court abused its discretion in denying their motion to sever these counts.[5] In particular, the defendants assert that the deli robbery was a distinct criminal episode that was not connected to the previous robberies. Bowie also asserts that the counts relating to the deli robbery should not have been joined because he did not participate in that robbery, and, at the very least, the counts should have been severed because they were prejudicial to him.

We agree with the District Court that "[d]espite defendants' arguments to the contrary, the Han's Deli counts were properly joined under Federal Rule of Criminal Procedure 8(b) because of the strong relationship between the events of March 24-25, 2010, and the robbery of the deli on March 30, 2010." Duran App. 34-35. Therefore, we conclude that joinder was proper under Rule 8(b). Furthermore, we affirm the District Court's denial of severance because the defendants have failed to demonstrate substantial prejudice.

## C.

Bowie also asserts that he was unfairly prejudiced by a variance between the single conspiracy charged in the indictment and the evidence produced at trial, which, he

---

[5] We review *de novo* whether counts were properly joined. *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003). We review a district court's denial of severance for abuse of discretion. *United States v. Hart*, 273 F.3d 363, 369 (3d Cir. 2001). "Significantly, even if the district court abused its discretion in denying the severance motion, the defendant must pinpoint clear and substantial prejudice resulting in an unfair trial." *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1993) (internal quotation marks omitted).

claims, demonstrated multiple conspiracies.[6] To determine whether there was a single conspiracy, we examine: (1) whether the conspirators had a common goal; (2) whether the agreement contemplated bringing about a continuous result that would not continue without the ongoing cooperation of the conspirators; and (3) the extent to which the participants overlapped. *United States v. Lee*, 359 F.3d 194, 207 (3d Cir. 2004).

Despite Bowie's argument to the contrary, the March 24-25 robberies and the subsequent deli robbery were part of a single conspiracy. As the District Court correctly pointed out, the criminal objectives of both the March 24-25 robberies and the deli robbery "remained the same. A substantial overlap in participants is present . . . . The events are separated only by a few days. Thus, the home invasions and deli robbery are but separate parts of a larger whole, with all crimes committed in furtherance of a single agreement." Bowie App. 32. Having reviewed the record and the parties' arguments, we conclude that the jury's finding of a single conspiracy was supported by sufficient evidence and that there was no variance between the conspiracy alleged in the indictment and the trial evidence.

### D.

Bowie next argues that the statement he made on June 23, 2010 should have been suppressed.[7] Where a suspect invokes his right to an attorney, questioning must cease

---

[6] We review the evidence in the light most favorable to the government to determine whether a reasonable jury could have found the existence of a single conspiracy. *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989).

[7] "This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's

until an attorney is present. *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). Police may engage in "further interrogation" of a suspect who has invoked his *Miranda* rights only if the following conditions are met: (1) "the suspect must initiate the conversation with the authorities," and (2) "after the suspect initiates the conversation, the waiver of the right to counsel and the right to silence must be knowing and voluntary." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983)).

The District Court held an evidentiary hearing on Bowie's motion to suppress and found that Bowie, following his phone calls to his lawyer's office and his grandmother, was "adamant that he wanted to speak" to law enforcement and "did not want to wait" until his lawyer arrived. Bowie App. 36. Based on this and other factual findings, the District Court determined that Bowie willingly initiated contact with the law enforcement officers after invoking his right to have an attorney present and that he knowingly and voluntarily waived his *Miranda* rights. Accordingly, the District Court denied Bowie's motion to suppress. This Court, in a related proceeding concerning the same statement, held that the District Court properly denied Bowie's motion to suppress. *See United States v. Duran*, 2014 WL 1378220, at *6 (3d Cir. Apr. 9, 2014). For substantially the same reasons set forth in our previous ruling, we affirm the District Court's denial of the motion to suppress.

**E.**

---

application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

8

Finally, Duran and Bowie challenge the sufficiency of the indictment.[8] They argue that the indictment is missing essential elements and that the judgment should be arrested, and the charges dismissed, pursuant to Federal Rule of Criminal Procedure 34(a). In particular, Duran and Bowie claim that the indictment does not sufficiently allege violations of 18 U.S.C. § 924(c) and 18 U.S.C. § 1951(a) because it does not contain the words, "in furtherance of any such crime," *see* 18 U.S.C. § 924(c), or "in furtherance of a plan or a purpose," *see* 18 U.S.C. § 1951(a).

An indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (internal quotation marks omitted).

In this case, the indictment closely parallels the relevant statutory language and contains the necessary elements of the charged offenses. For example, 18 U.S.C. § 1951(a) provides that: "[w]hoever in any way or degree *obstructs, delays, or affects commerce . . . by robbery* or extortion or attempts or conspires so to do, *or* commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be [punished]." 18 U.S.C. § 1951(a) (emphasis added). The indictment alleges that the defendants "attempted to obstruct,

---

[8] This Court exercises plenary review over a challenge to the sufficiency of an indictment. *United States v. Whited*, 311 F.3d 259, 262 (3d Cir. 2002). We uphold an indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007) (internal quotation marks omitted).

delay, and affect commerce and the movement of articles and commodities in commerce, by robbery." *See, e.g.*, Joint App. 60. As the District Court correctly explained in its post-trial opinion, 18 U.S.C. § 1951(a) is phrased in the disjunctive. Because the indictment sufficiently alleges all of the acts necessary to constitute a violation of the first prong of 18 U.S.C. § 1951(a), the indictment is not defective.[9]

### III.

For the foregoing reasons, we affirm the judgment of the District Court.

---

[9] Like 18 U.S.C. § 1951(a), 18 U.S.C. § 924(c) is phrased in the disjunctive. For similar reasons, the defendants' challenge as to this statutory provision fails.