NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2223
_____

UNITED STATES OF AMERICA

v.

THOMAS V. SAVINO,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cr-00582-001)
District Judge: Honorable Stanley R. Chesler
_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 9, 2019
Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges*.

(Opinion Filed: September 24, 2019)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Thomas V. Savino, M.D., appeals his judgment of conviction and sentence. We will affirm.

I[1]

Savino operated a solo medical practice in Staten Island, New York. From August 2012 to April 2013, he accepted monthly cash payments from Biodiagnostic Laboratory Services (BLS), a blood laboratory headquartered in Parsippany, New Jersey. Savino agreed with Cliff Antell, a BLS recruiter, to allow the lab to set up a station to draw blood in the rear suite of his medical office. In May 2013, Antell began cooperating with the FBI during its investigation of BLS. He recorded a conversation in which Savino agreed to a different blood referral arrangement to replace the BLS deal.

A federal grand jury in Newark, New Jersey indicted Savino on ten counts.[2] Savino moved to dismiss the indictment, but the District Court denied the motion. After

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review over a district court's denial of a motion for judgment of acquittal based on the sufficiency of the evidence." *United States v. Berrios*, 676 F.3d 118, 132 (3d Cir. 2012). When reviewing a motion to dismiss an indictment, we review the District Court's legal conclusions de novo and its factual findings for clear error. *E.g., United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012). We review the procedural and substantive reasonableness of a sentence for abuse of discretion. *E.g., United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

[2] The counts include: conspiracy to violate the federal Anti-Kickback statute, Travel Act, and to defraud patients of honest services (count one); illegal remuneration in violation of the federal Anti-Kickback statute (counts two through four); use of the mail and facilities in interstate commerce and interstate travel to promote, carry on and

an eight-day trial, the jury found Savino guilty on all ten counts. And the Court denied

Savino's Rule 29 motion for judgment of acquittal.

The Presentence Investigation Report (PSR) first calculated Savino's base offense

level at 8, with the gross receipts of the benefit conferred on BLS resulting in a 12-level

increase under § 2B4.1(b)(1) and § 2B1.1(b)(1)(G) of the United States Sentencing

Guidelines, for a total base offense level of 20. The PSR applied a 2-level increase for

abuse of a position of trust under Guidelines § 3B1.3, bringing his total offense level to

22. The applicable Guidelines range was 41 to 51 months. Savino objected to the 12-level

increase in his sentencing memorandum, but the District Court disagreed. The Court also

rejected Savino's request for a downward departure under § 5H1.6 based on family ties

and responsibilities and imposed a within-Guidelines sentence of 48 months'

imprisonment.

## II

## A

We begin with Savino's contention the Government failed to produce sufficient

evidence showing he knowingly accepted bribes from BLS, which is required for each

crime charged in the indictment. Savino argues the evidence shows he believed the cash

payments were rent because: he received them monthly; BLS used the office for business

separate from his own; and Savino consistently called the payments rent. He also notes

---

facilitate commercial bribery (counts five through seven); and scheme to defraud patients
of honest services (counts eight through ten).

"[t]here were no witnesses that the doctor referred patients to BLS after examinations." Savino Br. 39.

Savino is correct that each of the charged crimes required the Government to prove he knew the payments were bribes and took them with the intent to refer patients to BLS.[3] But Savino overlooks the evidence presented at trial from which a rational jury could find "the essential elements of the [charged] crime[s] beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 425 (3d Cir. 2013) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

---

[3] To sustain a conviction for conspiracy, the Government must prove beyond a reasonable doubt: "(1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." *United States v. Rigas*, 605 F.3d 194, 206 (3d Cir. 2010) (quoting *United States v. Harmas*, 974 F.2d 1262, 1267 (11th Cir. 1992)).

The Anti-Kickback statute counts require proof that Savino: (1) "knowingly and willfully"; (2) "solicit[ed] or receive[d ] any remuneration"; (3) "in return for referring any individual to a person for the furnishing . . . of any item or service for which payment may be made in whole or in part under the Federal health care program." 42 U.S.C. § 1320a-7b(b)(1)(A). The Travel Act prohibits the use of the mail system or other facilities in interstate commerce for the purpose of engaging in "any unlawful activity." 18 U.S.C. § 1952(a)(3). Here, the predicate offense was bribery under New Jersey's commercial bribery statute, which makes it a crime to "accept[ ] or agree[ ] to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which [a person] is subject as . . . [a] . . . physician." N.J. Stat. Ann. § 2C:21-10.

Finally, the Honest Services fraud counts require proof that Savino "devised or intend[ed] to devise" a scheme to defraud patients of honest services "by means of false or fraudulent pretenses, representations, or promises" through a wire in interstate commerce. 18 U.S.C. §§ 1343, 1346.

4

The Government presented ample circumstantial evidence that Savino intended to accept bribes from BLS. *Cf. United States v. McKee*, 506 F.3d 225, 235 n.9 (3d Cir. 2007) (explaining that "circumstantial evidence is routinely offered to satisfy the intent element in criminal cases"). Savino allowed BLS to operate a laboratory in his office space without a written agreement in return for cash payments. The lab had no public entrance—patients could access the area where blood was drawn only through Savino's office. In the conversation Antell recorded, Savino haggled over the payment scheme with a new potential lab, explaining he had "good volume" and could send them certain urine testing "that pays tremendously well." Supp. App. 1069, 1072. He accepted a cash payment of $1,500 ostensibly from the new lab and offered to split monthly cash payments with Antell if he got the company to do urine testing. These facts more than suffice to sustain a jury verdict, which "must be upheld as long as it does not 'fall below the threshold of bare rationality.'" *Caraballo-Rodriguez*, 726 F.3d at 431 (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam)).

B

Savino also claims the District Court erred in not dismissing the Travel Act counts because violations of the New Jersey commercial bribery statute cannot serve as predicate acts for his conduct in New York. Relatedly, he contends the New Jersey bribery statute is void for vagueness because it does not provide fair warning that a New York physician could be criminally liable under that act. Finally, he argues the Court should have dismissed the Travel Act and Honest Services counts because "[t]here was

5

no established fiduciary relationship between the doctors and his patients made clear by the applicable statutes or case law." Savino Br. 46.

These arguments are unpersuasive. First, we have held that out-of-state conduct under the New Jersey commercial bribery statute can serve as a predicate offense under the Travel Act. *See United States v. Lee*, 359 F.3d 194, 205–07 (3d Cir. 2004). In *Lee*, we explained that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [the defendant] had been present [in the state] at the effect." *Id.* (alterations in original) (quoting *Strassheim v. Daily*, 221 U.S. 280, 285 (1911)). As the District Court noted, the indictment alleged BLS was based in New Jersey; the blood was shipped to and tested there; and the payments from Antell came from New Jersey. So we agree with the District Court that New Jersey had a legitimate and substantial interest in "imposing criminal liability for individuals who receive bribes from New Jersey-based corporations which constitute . . . bribery under the New Jersey [c]ommercial [b]ribery [s]tatute." App. 112.

Savino's argument that the New Jersey commercial bribery statute is void for vagueness is flawed for similar reasons. A statute is void for vagueness if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Baptiste v. Att'y Gen.*, 841 F.3d 601, 615 (3d Cir. 2016) (quoting *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015)). Savino's dealings with New Jersey-based BLS, as detailed in the indictment, gave him fair notice under the New

6

Jersey bribery statute. *See Lee*, 359 F.3d at 206. And the statute specifies that Savino had fiduciary duties as a doctor: it criminalizes the acceptance of "any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which he is subject as . . . [a] physician." N.J. Stat. Ann. § 2C:21-10. So Savino's contention that the District Court should have dismissed the Travel Act and Honest Services counts because of a lack of an "established fiduciary relationship between the doctors and his patients" is likewise incorrect. *See* Savino Br. 46.

For these reasons, the District Court did not err in denying Savino's motion to dismiss the Travel Act and Honest Services counts.

C

Finally, Savino mounts several challenges to his 48-month sentence. None is persuasive.

First, he contends the Court should have increased his base offense by 10 levels instead of 12 under Guidelines § 2B1.1(b)(1)(G). He argues the Court's benefit determination erroneously relied on "attorneys' theories and estimates, rather than actual evidence" about direct costs, which should be subtracted from the total benefit estimate. Savino Br. 52. The record suggests otherwise. The District Court's finding that the Government supplied "more than sufficient evidence to support" a benefit exceeding $250,000 was based, in large part, on expert testimony from an FBI forensic accountant and an extensive letter brief reinforcing its calculations. App. 233.

7

Next, Savino claims the District Court procedurally erred by failing to address disparities between his sentence and those of other doctors previously sentenced for involvement in the same BLS scheme. At sentencing, the Court distinguished Savino from those defendants (who had lower Guidelines ranges and received downward departures for cooperation) and explicitly compared Savino to Dr. Bernard Greenspan (who received leniency because of his age). So the Court gave meaningful consideration to sentencing disparities in its analysis of the 18 U.S.C. § 3553(a) factors. *See United States v. Merced*, 603 F.3d 203, 215–16 (3d Cir. 2010).

Finally, Savino contends his 48-month sentence is substantively unreasonable because the Court failed to account for his positive traits, including his service to his community as a physician. But the record again contradicts this claim. The Court considered Savino's arguments for mitigation, including the letters and videos from patients supporting him and his filial obligation to his elderly mother. The Court also thoroughly explained its analysis of the § 3553(a) factors. Savino's within-Guidelines sentence is not unreasonable. *See United States v. Tomko*, 592 F.3d 558, 567–68 (3d Cir. 2009) (en banc).

* * *

For the reasons stated, we will affirm the District Court's judgment and sentence.

8